MARGARET SEIDELMAN, d/b/a Margaret's Hi-Acre Mobile Home Park, Plaintiff-Appellee, *v.* CONSTANTINE KOUVAVUS, Defendant-Appellant.

Second District   No. 77-72

Opinion filed February 15, 1978.

Gary L. Shilts, of Aurora, for appellant.

Richard W. Husted, of Elgin, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Margaret Seidelman, d/b/a Margaret's Hi-Acre Mobile Home Park, brought forcible entry and detainer proceedings (Ill. Rev. Stat. 1975, ch. 57, pars. 2, 2a) against the defendant Constantine Kouvavus to regain possession of a mobile home site. At trial the defendant filed two affirmative defenses, the first alleging that the rules and regulations of the trailer park comprised a written contract which extended the terms of the oral month-to-month lease and barred eviction; and the second alleging that plaintiff had attempted to unilaterally amend the rules and regulations in an effort to extort money from defendant and that the eviction was intentionally issued in retaliation and reprisal for defendant's efforts to organize the tenants of plaintiff and petition the plaintiff for fair treatment. The trial court refused to allow defendant's counsel to cross-examine the plaintiff as to her motivation in seeking the eviction and following presentment of proofs to a jury, the trial court on plaintiff's motion directed a verdict for the plaintiff and entered judgment for possession. Defendant appeals.

Defendant moved onto a lot in the trailer park owned by plaintiff in April of 1970. No written lease in the ordinary sense was executed. Rent was paid by the month. However, defendant signed a document entitled Mobile Home Park Rules and Regulations (Exhibit A) which included various general rules related to the conduct of the mobile home park and concluded:

"The management reserves the right to alter or change these rules when the occasion demands it. The management does not want to

have to evict anyone from this Park, but any violation of these rules may make eviction necessary."

On May 1, 1976, plaintiff promulgated additional rules for residents of the trailer park. The new rules contained a provision that forbade any resident to sell his mobile home without the consent of the landlord and where her consent was forthcoming the resident was required to pay $200-$500 depending on the width of his home. The defendant thereupon requested the plaintiff to rescind the objectionable aspects of the new rules and also sought to organize the tenants in a collective effort to have the new rules rescinded. On July 29, 1976, the plaintiff served notice on the defendant that his tenancy would terminate as of August 1, 1976; and upon failure of the tenant to leave brought the forcible entry and detainer proceedings.

The defendant contends that his tenancy was for an indefinite term and could not be terminated absent a violation of one of the provisions of the rules and regulations and further argues that he had not violated any of these provisions. He also contends that the court erred in preventing him from proving a defense of retaliatory eviction based on common law principles.

■■ Defendant admittedly paid his rent on a month-to-month basis. In the absence of a contrary agreement this would give rise to a month-to-month tenancy. (See *Strong v. Soodvoisky*, 141 Ill. App. 183, 185 (1908); *cf. Kachigian v. Minn*, 23 Ill. App. 3d 722, 725 (1974).) The defendant claims, of course, that the rules and regulations do provide to the contrary. We have found little authority which is helpful in determining what effect is to be given to the "Rules and Regulations" which, here, was the only written document which the tenant signed. Although it has not been adopted in Illinois, the Uniform Residential Landlord and Tenant Act provides what we believe is a sensible approach to the question. In effect, the uniform act defines a "Rental Agreement" to include "all agreements, written or oral, and *valid rules and regulations* * * * embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises." (Emphasis added.) Uniform Residential Landlord and Tenant Act, pars. 1.301(11), 3.102.

■■ This conclusion, however, is of little aid to the defendant in supporting his first claim that the rules and regulations gave him a tenancy of indefinite tenure so long as he complied with the conditions. It should be noted that the defendant does not argue that the plaintiff ever expressly made a promise of indefinite tenure either orally or in writing. He argues instead that the trial court should have implied a covenant between his landlord and himself that she would not seek to terminate his tenancy so long as he complied with the rules and regulations. However, the general rule is that before a covenant will be implied it must appear

that it was so clearly in the contemplation of the parties that they deemed it unnecessary to express it either orally or in writing or that such an implied covenant is necessary in order to give effect to the purpose of the contract as a whole. See, *e.g.*, *Goldblatt Bros., Inc. v. Addison Green Meadows, Inc.*, 8 Ill. App. 3d 490, 497 (1972).

● 3, 4 The language which defendant relies up, ("any violation of these rules may make eviction necessary * * *"), does not meet the stated standards to imply a covenant of indefinite tenure. Any effect which we might properly give to the rules and regulations as providing terms and conditions concerning the use of the premises would not prevent the landlord, assuming the month-to-month tenancy, from evicting the defendant without giving reasons based on the violation of the rules and regulations. As stated in *Chicago Housing Authority v. Stewart*, 40 Ill. 2d 23, 27 (1968):

> "Defendant says 'There is no reason why, in an action to recover the premises, the Authority cannot state in the complaint what covenant the tenant has broken.' This clearly misconceives the issue. When a lease expires by lapse of time, or when the lessee is notified that the lease will not be renewed for another term, it is immaterial what, if any, covenant has been broken. Obviously the selection of a tenant on a month-to-month basis cannot carry with it a continuing and indefinite right to tenure as long as no covenant is broken."

The trial court therefore properly directed a verdict as to the first defense raised by the defendant. See Ill. Rev. Stat. 1975, ch. 80, par. 6.

We next discuss the second defense based upon a theory of retaliatory eviction. Although defendant has not pleaded and apparently does not rely on the statute, we take note of section 1 of "An Act to protect the rights of tenants to complain of violations of governmental regulations" (Ill. Rev. Stat. 1975, ch. 80, par. 71):

> "It is declared to be against the public policy of the State for a landlord to terminate or refuse to renew a lease or tenancy of property used as a residence on the ground that the tenant has complained to any governmental authority of a bona fide violation of any applicable building code, health ordinance, or similar regulation. * * *"

■■ The quoted provision of the statutory defense of retaliatory eviction has been construed by the Illinois Supreme Court in *Clore v. Fredman*, 59 Ill. 2d 20, 26-27 (1974):

> "* * * only as barring the right of a landlord to terminate a lease and evict the tenant in those cases in which that action is undertaken in retaliation for the tenant's complaints to governmental authorities regarding code violations."

Here, the tenant's claim is that he is being evicted because he petitioned the landlady and circulated a petition among his co-tenants in an attempt to have certain rules and regulations of the mobile home park rescinded. This is not within the narrow parameters of section 1 of "An Act to protect the rights of tenants to complain of violations of governmental regulations" (Ill. Rev. Stat. 1975, ch. 80, par. 71) as defined in *Clore v. Fredman.*

■■■ Defendant is also unable to rely on the protection of the First and Fourteenth Amendments; in general, a private landowner may restrict the exercise, on his premises, of the right of free speech and the right to petition for the redress of grievances without offending the Constitution. (*Hudgens v. National Labor Relations Board,* 424 U.S. 507, 47 L. Ed. 2d 196, 96 S. Ct. 1029, 1033-37 (1976).) Indeed, even invidious discrimination is not violative of the Fourteenth Amendment, where the impetus for such discrimination is private rather than public. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 32 L. Ed. 2d 627, 92 S. Ct. 1965, 1971 (1972).

■■ Thus, where a landlord seeks to evict a tenant, the latter has no constitutionally based defense of retaliatory eviction, even if it can be shown that the landlord is seeking the tenant's ouster in reprisal for the latter's exercise of his right of free speech or his right to petition for the redress of grievances. See, *e.g., Aluli v. Trusdell,* 54 Haw. 417, 508 P.2d 1217, 1222 (1973); *Lincoln Financial Corp. v. Ferrier,* 567 P.2d 1102, 1104-05 (Utah 1977).

Whether the courts should recognize a defense of retaliatory eviction, broader than the statutory defense, has not been decided in Illinois. The issue has, however, been the subject of conflicting opinions in other jurisdictions. The courts of two States have squarely refused to recognize such a defense. (*Aluli v. Trusdell,* 54 Haw. 417, 508 P.2d 1217, 1222 (1973); *Lincoln Financial Corp. v. Ferrier,* 567 P.2d 1102, 1104-05 (Utah 1977).) However, in *Edwards v. Habib,* 397 F.2d 687, 699 (D.C. Cir. 1968), the court held, on public policy grounds and on a broad reading of legislative intent, that a landlord was not able to evict a tenant in retaliation for the tenant's report of housing code violations. The California courts also recognize a nonstatutory defense of retaliatory eviction. (See, *e.g., S. P. Growers Association v. Rodriguez,* 17 Cal. 3d 719, 552 P.2d 721, 131 Cal. Rptr. 761, 763 (1976); see also *Schweiger v. Superior Court of Alameda County,* 3 Cal. 3d 507, 476 P.2d 97, 90 Cal. Rptr. 729, 733, (1970).) It should be noted that the *Edwards* and *Schweiger* cases were concerned with evictions in retaliation for a tenant's complaint of housing code violations; the protection which those cases extended to tenants is available in Illinois pursuant to statute (Ill. Rev. Stat. 1975, ch. 80, par. 71).

We do not exclude the possibility that circumstances may arise, in

future cases, where a landlord's action in seeking to evict a tenant would be so invidiously motivated and would so contravene the public policy of our State that we would not permit our courts to implement the eviction in a forcible entry and detainer proceeding. While defendant was prevented from cross-examining the landlord as to her motivation in seeking the defendant's eviction, the latter would have been limited in any event by the allegations contained in his pleadings. These allegations even if proved would not in our view warrant a ruling that would extend by a judicial statement of public policy the statutory definition of retaliatory eviction as limited in *Clore v. Fredman.* We therefore affirm the judgment of the trial court.

Affirmed.

GUILD and BOYLE, JJ., concur.