PEARL H. NOE *et al.*, Plaintiffs-Appellants, v. NORMA B. SANDHOLM CLEMONS, Defendant-Appellee.

Fourth District   No. 4—88—0095

Opinion filed August 18, 1988.

Donald W. Wilcox, Jr., of Thomson & Weintraub, of Bloomington, for appellants.

Tracy A. Smith, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

In this forcible entry and detainer action, the purchasers of real estate under a contract for warranty deed seek eviction of the seller, who peaceably entered the property with the permission of one of the purchasers. The circuit court entered a directed finding for defendant at the conclusion of the plaintiffs' evidence. Because the uncontradicted evidence reflects no forfeiture of the purchasers' rights under the contract for warranty deed, we reverse the circuit court's directed finding. This action is of a strange posture, for the plaintiffs seek protection of the notice requirements of sections 9—104.1 and 9—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 9—104.1, 9—110), as well as a finding of no abandonment or forfeiture pursuant to a contract for the sale of real estate.

This litigation has its roots in a dissolution of marriage proceeding involving only the plaintiffs. The provisions of a supplemental judgment entered September 23, 1987, in cause No. 86—D—633, McLean County, Illinois, determined the property rights of the plaintiffs Pearl H. "Sue" Noe (Sue) and Lawrence L. Noe (Larry), following the dissolution of their marriage. The supplemental judgment adopted an August 25, 1987, opinion of the circuit court which noted that the parties purchased a home in Lexington from Larry's mother, defendant

Norma B. Sandholm Clemons (Clemons), under an installment contract for warranty deed.

The contract for warranty deed, executed October 1, 1985, listed a purchase price of $40,000. Sue and Larry paid $5,000 cash to Clemons and transferred to her title to a 1977 Arlington mobile home, in exchange for a $15,000 credit on the purchase price of the Lexington residence. The remaining $20,000 was to be paid at the rate of $250 per month, with no interest being charged. Upon the buyers' default, the seller was empowered, *inter alia*:

> "[T]o treat this Agreement as at an end, to forfeit the contract, to retain all payments made, and to re-enter and to regain possession of said premises as if this Agreement had never been made, subject to the provisions of any forcible entry and detainer or other statute relating to the termination of this Agreement and relating to the respective rights of the parties."

At the time of the dissolution of the plaintiffs' marriage, the Lexington residence was worth $40,000, and approximately $15,000 remained due on the contract for its purchase.

In its August 25, 1987, opinion, the circuit court further found that since vacating the Lexington residence and returning possession of the same to Clemons, Larry had been living in the Arlington mobile home, title to which had been transferred to Clemons as a down payment on the Lexington residence. Subject to various allowances and credits which are not here relevant, the court ordered that the Lexington residence be sold, the contract for its purchase paid off, and the net proceeds divided equally between Sue and Larry. The court noted that since Larry had surrendered possession of the Lexington residence to Clemons, legal proceedings might be necessary to place the purchasers of the premises in possession thereof.

Larry and Sue were served with a document entitled "Notice of Intention to Declare Forfeiture of all Rights under Articles of Agreement for Warranty Deed and Notice of Intention to File Forcible Detainer Suit" on March 10, 1987, and March 12, 1987, respectively. This document provided in part:

> "NOW, THEREFORE, Purchaser, you are hereby notified:
>
> 1. Unless all defaults under the Contract [for warranty deed pertaining to the Lexington residence] are cured on or before the 10th of April, 1987, that it is the intention of Seller to declare all your rights under the Contract to be forfeited, and all payments made by you will be retained by the Seller.
>
> 2. That it is the intention of Seller to institute proceedings

to evict you from possession of the Property under an Act relating to Forcible Entry and Detainer, unless you remedy the aforesaid defaults on or before the 10th day of April, 1987."

The copy of this notice which appears in the record is not signed or dated.

In a further order in the dissolution of marriage proceeding, entered October 28, 1987, the circuit court appointed Sue as agent on behalf of the plaintiffs for the purpose of removing Clemons from the Lexington residence. The order was not to be effective unless Larry did not voluntarily join in a forcible entry and detainer action or other necessary legal proceedings to remove Clemons from the premises by October 30, 1987.

On November 6, 1987, Sue and Larry filed a complaint in forcible entry and detainer against Clemons. A bench trial on this complaint was held February 5, 1988.

At the bench trial, Larry acknowledged the first payment on the Lexington residence was due October 1, 1985. He, as opposed to Sue, made all of the payments which were made on the residence. The last date on which Larry made a payment was November 20, 1986. At that time, Larry was ahead on the payments, and the payment which was made on November 20, 1986, was not due until March 1, 1987.

Larry testified that he ordered Sue to leave the Lexington residence at the time of their separation. The mobile home which he and Sue gave to Clemons as a partial down payment on the Lexington residence had been the plaintiffs' marital home prior to their moving into the Lexington residence. Subsequent to Sue's leaving the Lexington residence, Larry continued to occupy the premises for a time. Later, Clemons moved into the Lexington residence, and Larry moved back to the mobile home at about the same time.

Larry further stated that he had not given Sue notice that he had given possession of the Lexington residence to Clemons. He also acknowledged Sue has never consented to his giving possession of the Lexington residence to Clemons. Clemons owns the mobile home in which Larry presently resides. Larry admitted not making any rent payments directly to Clemons with respect to the mobile home.

Larry further acknowledged Clemons has never paid him anything for his interest in the Lexington residence. Sometime prior to August 24, 1987, Clemons told Larry to fix up the mobile home and sell it, and Larry has put a for sale sign on it. Larry stated Clemons was aware that he and Sue were separated shortly after November 1986.

On cross-examination, Larry acknowledged that he made the first payment on the Lexington residence one month behind schedule. He

further testified that he lived in the Lexington residence until the first part of 1987 and then just walked away from it. He stated he called Clemons when Sue left and told her that he was not going to make any further payments on the Lexington residence.

Sue testified that she and Larry lived in the Lexington residence for approximately one year and two months prior to their November 1986 separation. Before moving into the Lexington residence, they had lived in the mobile home which Clemons received as a down payment on the purchase of the Lexington residence. Sue had no knowledge as to whether the copy of the notice regarding the Lexington residence which she received on March 12, 1987, was signed.

Sue stated she last checked on the status of the payments on the contract for warranty deed pertaining to the Lexington residence in January 1987 and was told the payments were current. At no time did Larry indicate to her he had stopped making payments on the contract. Moreover, Sue never gave Larry authority to speak or act on her behalf with respect to her rights under the contract for warranty deed. Sue stated that before her and Larry's separation, Larry directed her to leave the Lexington residence.

Sue further testified she has not had any communication with Clemons since she moved out of the Lexington residence. She was not informed when Clemons moved back into that residence, and she did not give Clemons permission to move back in. Also, Sue stated she has never indicated to Clemons that she was giving up any rights which she had by virtue of the contract for warranty deed pertaining to the Lexington residence and has not been given any compensation in exchange for giving up or losing any rights which she has under that contract. She has not been served with any notices or summonses with respect to this matter other than the notice which she received on March 12, 1987. Also, the attorney who represented Sue when she received the March 1987 notice had never indicated to her that he told other attorneys she was giving up any rights which she had under the contract for warranty deed pertaining to the Lexington residence.

Sue stated her sole desire is to make the Lexington residence saleable so that the proceeds of its sale can be divided under the circuit court's order in the dissolution of marriage proceeding. Sue has no plans to personally move into the Lexington residence.

On cross-examination, Sue stated that after receiving the notice regarding the Lexington residence on March 12, 1987, she did not attempt to contact Clemons with respect to doing something about the premises. After receiving the March 1987 notice, Sue did not make

any payments to Clemons under the contract for warranty deed pertaining to the Lexington residence, and she did not pay any real estate taxes on the premises. She stated that she did not ever tell Clemons that she was not going to pay for the Lexington residence.

At the conclusion of the plaintiffs' evidence, the circuit court entered a directed finding in favor of Clemons. In entering this finding, the court held that Sue received a notice of default in payments which was sufficient under terms of the purchase contract. The court also noted Clemons regained possession of the Lexington residence in a peaceable manner. Furthermore, the court observed Sue did nothing with respect to her rights in the Lexington residence from the time she received the March 12, 1987, notice concerning it, until she filed the present forcible entry and detainer action on November 6, 1987, and did not attempt to regain possession of the property during that period. In the court's view, Sue "sat on her rights" during this time. The court was also of the view that Clemons' actions with respect to the Lexington residence were "not inappropriate." Finally, the court implied that because Sue knew whom the notice which she received on March 12, 1987, was from and because the notice was readable, the lack of a signature on the copy of the notice which was introduced into evidence and which appears in the record is of no consequence.

In appealing the circuit court's directed finding in favor of Clemons, the plaintiffs assert that the notice which Sue received on March 12, 1987, did not by its terms allow her a period of 30 days in which to cure the defaults under the contract for warranty deed pertaining to the Lexington residence. The plaintiffs contend that since the cure period allowed Sue under terms of the notice was less than that allowed installment contract purchasers of real estate under either the common law or the forcible entry and detainer provisions of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 9—101 through 9—321), there is no basis for holding their rights under the contract for warranty deed pertaining to the Lexington residence have been forfeited.

Secondly, the plaintiffs maintain that under the terms of the notice which they received in March 1987, the seller was obligated to serve the plaintiffs with both a declaration of forfeiture and a demand for possession in order to effectively terminate the plaintiffs' superior right to possession of the Lexington residence. The plaintiffs contend that because they were not served with such documents, they continue to enjoy a right to possession of the Lexington residence superior to that of Clemons. The plaintiffs assert that in view of Sue's being ordered out of the Lexington residence by Larry, and Clemons'

probable knowledge that Sue did not intend to give up any interest which she had in the premises, it cannot be said that Sue intended to abandon any interest which she had in the Lexington residence. The plaintiffs further argue that Clemons' being permitted to forfeit the purchase contract under the circumstances of this case would negate the protection afforded installment contract purchasers of real estate by section 9—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 9—110), which grants such purchasers who are defendants in forcible entry and detainer actions and have paid over 25% of the purchase price a 180-day redemption period before they lose their interest in the property which they are purchasing.

Finally, relying on the supreme court's decision in *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499, the plaintiffs argue that any forfeiture of their rights to Clemons on the part of Larry was fraudulent and should thus be deemed of no effect. They point out that Larry's allowing the Lexington residence to return to Clemons' possession when his and Sue's equity in it was $24,250 cannot be characterized as the action of a responsible businessman. They also state Larry's ability to continue making payments on the Lexington residence can hardly be questioned. In this context, the plaintiffs state it would not have made sense for Sue to continue making payments on the Lexington residence, since she was not occupying it and was having to make separate housing payments of her own.

Clemons asserts a directed finding was properly entered in her favor, because plaintiffs were admittedly in default of their obligations under the contract for warranty deed pertaining to the Lexington residence and therefore had no right to possession of the premises superior to that of Clemons. Clemons asserts a formal declaration of forfeiture was not necessary in order to terminate plaintiffs' right to possession of the Lexington residence, since such a declaration is unnecessary where, as here, a contract purchaser is not in possession of and has voluntarily surrendered possession of the subject premises. In support of this contention, Clemons relies solely on *Hadie v. Erlandson* (1963), 41 Ill. App. 2d 328, 190 N.E.2d 848 (abstract of opinion).

Clemons also asserts that Sue's failure to take any action with regard to curing the plaintiffs' defaults under the contract for warranty deed pertaining to the Lexington residence for some nine months after receiving the notice concerning the contract on March 12, 1987, amounted to an abandonment of her rights thereunder. Finally, Clemons asserts the present case is distinguishable from *Hofmann*, because, *inter alia*, she was not a party to the proceeding which dissolved the plaintiffs' marriage and Larry may well have had a legiti-

mate business reason for abandoning the Lexington residence, in that he could not afford to keep it without the financial help that he formerly derived from Sue.

Under section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110), the circuit court may, at a bench trial, enter a finding or judgment in the defendant's favor at the close of the plaintiff's evidence. In determining whether to enter such a finding or judgment, the court must first determine whether the plaintiff has made out a *prima facie* case, *i.e.*, has presented at least some evidence on every element essential to its cause of action. If the plaintiff has not made out a *prima facie* case, the circuit court should enter judgment in defendant's favor.

If the plaintiff has established a *prima facie* case, the trial judge, as finder of fact, must weigh the plaintiff's evidence. In so weighing the evidence, the court is to consider all of the evidence, including any favorable to the defendant, and is to pass on the credibility of the witnesses and draw reasonable inferences from the testimony. If this weighing process results in negation of some of the evidence necessary to the plaintiff's *prima facie* case, judgment should be entered in the defendant's favor. Otherwise the court should proceed as if no motion for a finding in defendant's favor had been made. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.

The purpose of forcible entry and detainer proceedings is to determine which party has a right to possession of and not title to real estate. Where such an action is brought after a peaceful entry by the defendant, the plaintiff must establish a right to possession of the disputed premises. (*In re Marriage of Naguit* (1982), 104 Ill. App. 3d 709, 433 N.E.2d 296.) The question of title to the disputed premises may not be determined in a forcible entry and detainer action. *Kitzer v. Rice* (1967), 90 Ill. App. 2d 72, 234 N.E.2d 115.

The unlawful detention of a premises is a wrong to each cotenant thereof. Thus a cotenant from whom possession of a premises is wrongly withheld by one not a cotenant may maintain a forcible entry and detainer action in order to regain possession of the disputed premises, even though the other cotenants choose not to join in the action. (35 Am. Jur. 2d *Forcible Entry and Detainer* §24 (1967).) In view of this principle, the present case is distinguishable from *Hofmann*. In that case, the court held that a forfeiture during the pendency of a dissolution of marriage proceeding of a farm, which the husband was buying under an installment purchase contract, defrauded the wife of her inchoate marital interest in the farm. The contract sellers of the farm were the husband's parents. The wife was

not a party to the installment purchase contract. Since the wife was not a party to the installment purchase contract, it was necessary to assign her a lien against the title of the sellers of the farm. In the present case, by contrast, Sue was a party to the contract for warranty deed pertaining to the Lexington residence. Therefore, she can assert any rights against Clemons—the contract seller—which Larry, her former husband, could have asserted. A holding that Larry's actions amounted to a fraudulent conveyance is not necessary in order to afford Sue the relief which she seeks in this forcible entry and detainer action.

The common law and statutory cure periods relevant to forcible entry and detainer proceedings (see *Eppers v. First National Bank* (1987), 151 Ill. App. 3d 902, 503 N.E.2d 589; Ill. Rev. Stat. 1985, ch. 110, par. 9—104.1(a)) are irrelevant to this action in which the purchasers seek eviction of the seller, who peaceably entered the subject property. It is manifest that these requirements apply to actions in which a seller seeks eviction of a purchaser in possession of the subject property. Even if these requirements were applicable to this action, the plaintiffs have had far more than the required 30 days in which to cure their default, since no forfeiture of their rights under the purchase contract has apparently been declared. Also, because the trial court did not find that the plaintiffs are entitled to possession of the subject property, section 9—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 9—110) is by its terms inapplicable to this action in its present posture.

■ However, Clemons' apparent failure to declare a forfeiture of plaintiffs' rights under the purchase contract means that under plaintiffs' evidence, they retain a superior right to possession of the Lexington residence. The March 1987 notice states that unless the plaintiffs' defaults are cured and remedied, the seller *intends* to declare the plaintiffs' rights forfeited and to initiate proceedings to evict the plaintiffs from the premises. This language is substantially identical to that contained in the purported notice of forfeiture at issue in *Dahm, Inc. v. Jarnagin* (1985), 133 Ill. App. 3d 14, 16, 478 N.E.2d 641, 643, which provided:

> " 'In accordance with the provisions contained in the contract between Dahm, Inc. and you dated March 21, 1974, you are hereby notified that Dahm, Inc. intends to file a civil lawsuit declaring a forfeiture based upon this agreement. The filing will occur on or about March 1, 1984.
>
> In the event the 1982 taxes are redeemed and the sum of $8,843.24, principal and interest, plus attorneys fees as pro-

vided in the agreement (now $500.00) are paid prior to that date, the action will not be filed as this would bring the contract to a current status.' "

In *Dahm*, the court held the language at issue did not accomplish a forfeiture of the contract purchasers' interest in the premises. Rather, the notice there at issue merely stated an *intent* to declare a forfeiture of the purchasers' rights under the contract and was not an unambiguous declaration that the agreement was forfeited. On the basis of the evidence presented by plaintiffs, the same situation pertains in the case at bar. The plaintiffs presented a *prima facie* case that they retained a superior right to possession of the Lexington residence under terms of the contract for warranty deed pertaining to the premises.

Clemons cites *Hadie v. Erlandson* (1963), 41 Ill. App. 2d 328, 190 N.E.2d 848 (abstract of opinion), for the proposition that notice of forfeiture of a land contract is not required where the purchasers are not in actual possession and have voluntarily given up possession of the subject premises. *Hadie* does not require a result different from that which we here reach. First, the *Hadie* decision was published in abstract form only, and Clemons has not appended a copy of the entire text of the opinion to her brief, in violation of Uniform Administrative and Procedural Rules for the Appellate Courts (47 Ill. App. 3d R. 8). For this reason alone, we would be justified in refusing to consider the possible impact of that decision on the case at bar. *Jones v. Meade* (1984), 126 Ill. App. 3d 897, 467 N.E.2d 657.

Secondly, *Hadie* was an action to quiet title. It was not a forcible entry and detainer action. In that case, the contract purchasers, who had voluntarily surrendered possession of the subject premises, were served with a notice of forfeiture, and they argued on appeal that the notice did not conform to the requirements of "An Act in regard to forcible entry and detainer," pertaining to signature and service on the defendants. (Ill. Rev. Stat. 1961, ch. 57, pars. 2, 3.) The court held that these statutory provisions were not applicable to a notice of forfeiture in the context of an action to quiet title. The court specifically stated, "the notice [of forfeiture] given was sufficient to inform defendants of plaintiffs' intention to determine the contract." (*Hadie*, page 5 of abstract.) In the present case, by contrast, there is no indication that Clemons has at any point declared a forfeiture of plaintiffs' rights under the contract for warranty deed pertaining to the Lexington residence. The evidence presented by the plaintiffs also shows Sue did not voluntarily surrender possession.

■■ ■ We cannot say that the plaintiffs' *prima facie* case is ne-

gated by evidence that Sue abandoned her rights under the contract for warranty deed pertaining to the Lexington residence. The acts relied upon to establish abandonment of a contract must be positive, unequivocal and inconsistent with the existence of the contract. (*Bocchetta v. McCourt* (1983), 115 Ill. App. 3d 297, 450 N.E.2d 907.) In the case at bar, the plaintiffs presented unequivocal evidence that Larry ordered Sue out of the Lexington residence and that Clemons thereupon took possession of the residence and has occupied it ever since. The record belies the assertion that Sue did nothing with respect to her rights regarding the Lexington residence between March 1987 and the filing of the present forcible entry and detainer action, for during most of that time period, Sue was attempting to establish her right to a share of the plaintiffs' equity in that property in the dissolution of marriage proceeding. The evidence is insufficient to establish an unequivocal intent on the part of Sue to abandon her rights with respect to the contract for warranty deed pertaining to the Lexington residence.

In sum, plaintiffs established a *prima facie* case that (1) they are still entitled to possession of the Lexington residence under terms of the contract for warranty deed pertaining to the residence, because their rights under that contract have never been forfeited, and (2) Clemons made a peaceable entry on the premises and is unlawfully withholding possession of the premises from plaintiffs. (See Ill. Rev. Stat. 1985, ch. 110, par. 9—102(a)(2).) There is no evidence which negates the evidence which supports the plaintiffs' *prima facie* case. Therefore, the circuit court erred in entering a directed finding in favor of Clemons.

The circuit court's directed finding in favor of Clemons is reversed, and this cause is remanded to the circuit court with directions to continue with the trial and to conduct any other necessary proceedings in this cause in a manner consistent with this opinion.

Reversed and remanded with directions.

GREEN, P.J., and LUND, J., concur.