646 N.E.2d 17 (1995)
269 Ill.App.3d 531
206 Ill.Dec. 885
In the Matter of the ESTATE OF John ROHRER, Deceased (Barbara Loomis, Executor, Respondent-Appellant and Cross-Appellee, v. Karin Geiselhart and Britta Rohrer, Petitioners-Appellees and Cross-Appellants).
No. 4-94-0117.
Appellate Court of Illinois, Fourth District.
Argued October 18, 1994.
Decided February 3, 1995.
Rehearing Denied March 3, 1995.
*18 John M. Wilkie (argued), Erwin, Martinkus, Cole & Ansel, Ltd., Champaign, for appellants.
Dan M. Slack, Michael R. Cornyn, Linda L. Laugges (argued), Thomas, Mamer & Haughey, Champaign, for appellee.
Justice McCULLOUGH delivered the opinion of the court:
Respondent Barbara Loomis appeals from an order entered in the probate estate of John Rohrer (decedent) ordering her to convey to the estate all her interest in property situated in New York for failure of delivery and acceptance of a deed in joint tenancy executed by decedent and his wife. Petitioners cross-appeal from the court's finding that decedent was not incompetent at the time of execution of the deed to the New York property.
Decedent and his wife, Bertha, are the parents of respondent and grandparents of petitioners. Until November 1988 they lived on their farm property in Chatham, New York. In May 1984, decedent executed a will naming respondent as executor and providing for disposition of his estate between respondent and his six grandchildren, expressly excluding any bequest to his son, George, the father of petitioners. On December 18, 1986, decedent and Bertha executed a deed prepared by their attorney conveying the New York property to themselves and respondent as joint tenants with right of survivorship. The deed was recorded on December 22, 1986, and marked for return to decedent's attorney, Keith Flint. At some time thereafter it came into respondent's possession, although it is disputed as to whether this occurred prior to the death of the grantors.
In November 1988, respondent brought her parents to live with her in Champaign, Illinois, because health problems prevented them from managing on their own. Both parents died in Champaign in 1989Bertha in February, and decedent in June at age 91. Petitioners filed a petition for citation to recover property for the estate, challenging only decedent's competency at the time of execution of the 1986 deed.
Hearings on the petition were held in September 1992 and July 1993 and witnesses were called or deposed by respondent for the sole purpose of giving evidence on the issue of decedent's competency. At those hearings respondent admitted that for approximately one year before her father's death he had *19 been suffering from Alzheimer's disease and she had been unaware at the time her parents executed the deed they had added her name in joint tenancy. She stated that she had paid nothing for the property in question, paid no taxes or expenses and collected no rents until after their deaths, and could not recall when her mother told her about her name being added to the deed, but it was not immediately.
Following the July 1993 hearing, petitioners moved to amend the pleadings to conform to proof of a theory that the deed failed for lack of delivery and acceptance within the lifetime of the grantors. Respondent objected on the basis that she was deprived of a right to offer rebuttal evidence to this theory. On August 22, 1993, the trial court ruled that the evidence failed to show decedent was incompetent at the time of execution of the deed and noted that the amended pleadings raised a new and different theory of a lack of delivery and acceptance of the deed. The court allowed the amendment, but permitted respondent to reopen the case with evidence to refute the new theory.
At a hearing on the amended petition held November 8, 1993, petitioners' counsel read into the record respondent's January 1993 deposition testimony wherein she had been asked whether she had discussed the deed with attorney Flint. She had answered: "No, I did not, I didn't know I was on it." Based on this statement and respondent's acknowledgement that she shared none of the expenses or benefits of the property prior to her parents' death, petitioners argued there had been no delivery of the deed.
Respondent then testified that she had received a birthday card from her mother in March 1987 containing a New York newspaper clipping dated January 30, 1987, showing the grantors' conveyance of the New York property to themselves and respondent. She also stated that she had visited her parents over spring break in March 1987 and her mother had handed her an envelope containing the deed. Based on counsel's hearsay objections, the court indicated it would accept the testimony for the limited purpose of showing respondent's state of mind as to acceptance of the deed and would reserve ruling on whether the testimony was admissible as evidence of delivery of the deed.
The trial court first determined that New York law applied in determining whether the deed was effective as a present conveyance by the grantors to themselves and respondent. It noted that a presumption of delivery arose based upon the recording of the deed, but that this presumption was dissipated by the existence of facts inconsistent with a present conveyance, such as the grantors' retention of exclusive possession and control of the property, payment of all expenses, and receipt of all benefits until after the death of Bertha. The court found that absent the presumption, there was no credible evidence of delivery because respondent's testimony regarding her receipt and knowledge of the deed was directly contradicted by her deposition testimony that she had no knowledge of being on the deed. The court concluded there was no competent evidence of either delivery or acceptance of the deed, both of which were required under New York law, and that the deed was ineffective to convey the property to the grantors and respondent as joint tenants. The court ordered respondent to execute a quitclaim deed conveying all her interest in the property to decedent's estate.
Respondent first contends the court erred in allowing petitioners' motion to amend the pleadings to raise the question of delivery of the deed. She argues that although section 2-616(c) of the Code of Civil Procedure (735 ILCS 5/2-616(c) (West 1992)) allows a pleading to be amended at any time, before or after judgment, to conform the pleadings to the proofs, a court should not permit amendment if it alters the nature of proof required to defend or if the other party would be prejudiced or surprised. (In re C.C. (1991), 224 Ill.App.3d 207, 216, 166 Ill. Dec. 540, 546, 586 N.E.2d 498, 504.) Respondent asserts that although she was afforded a hearing to present evidence on the issue of delivery of the deed, other out-of-State witnesses with relevant testimony found it difficult to attend subsequent hearings.
The record does not indicate that respondent raised the issue of the unavailability of witnesses with relevant evidence to the trial *20 court and she apparently acquiesced without objection to petitioners' offer to allow a reopening to put forth evidence which might refute the new theory. Therefore, this issue is deemed waived for purposes of review. See Western Casualty & Surety Co. v. Brochu (1985), 105 Ill.2d 486, 500, 86 Ill.Dec. 493, 498, 475 N.E.2d 872, 879.
Respondent next contends the court erred in concluding the grantors failed to effectively convey the New York property to respondent. There is no dispute regarding the execution of the deed of December 18, 1986, nor its recording on December 22, 1986. The issue in this case is strictly a question of delivery of the deed. Under New York law, delivery of the deed is essential to the transfer of title. (Ten Eyck v. Whitbeck (1898), 156 N.Y. 341, 352, 50 N.E. 963, 966.) Once a grantor unconditionally hands over the deed and the grantee accepts it, the transfer is effective to place title in the grantee, regardless of subsequent events. (Buckley v. Chevron, U.S.A., Inc. (1991), 149 Misc.2d 476, 478-79, 565 N.Y.S.2d 419, 421.) In this case, the trial judge found incredible respondent's statement at the November 8 hearing that her mother handed her the deed in March 1987, based on a seeming contradiction of earlier testimony that she was unaware her name had been added to the deed. While it is possible to view the two statements as noncontradictory based on the time frames to which they refer, the reviewing court should not disturb the finding of the trier of fact based on a weighing of credibility. (Rametta v. Kazlo (1979), 68 A.D.2d 579, 581, 418 N.Y.S.2d 113, 114-15.) Accordingly, we will not reject the trial court's determination that the credible evidence failed to show the deed had been hand delivered to respondent by the grantors.
While execution and recording of a deed may give rise to a presumption of delivery and acceptance (Munoz v. Wilson (1888), 111 N.Y. 295, 304-05, 18 N.E. 855, 858-59), that presumption is not conclusive and may be refuted by facts inconsistent with the transfer of title. The trial court found the presumption dissipated by the grantors' retention of possession and control of the property following the making of the deed, together with the continuing payment of all expenses and retention of all benefits attendant to the property, facts the trial court considered wholly inconsistent with a present conveyance.
The concept of "delivery" of a deed was derived from early times when a manual transfer of a written conveyance of land was symbolic of the transfer of possession of the land itself and a necessary prerequisite to its legal operation. (H. Tiffany, Real Property § 1033, at 359 (3d ed. 1975).) The modern view is that the question of delivery is one of the intention of the grantor as to whether the deed is to be legally operative, manifested by his acts or words and determined by the facts and circumstances at the time and subsequent to the alleged delivery. (See Fisher v. Hall (1869), 41 N.Y. 416, 420; Munoz, 111 N.Y. at 305, 18 N.E. at 859; Saltzsieder v. Saltzsieder (1916), 219 N.Y. 523, 530-31, 114 N.E. 856, 859; Radecki v. Radecki (1952), 279 A.D. 1137, 1137-38, 112 N.Y.S.2d 764, 765.) So long as the grantor indicates in the presence of a witness his intent that the deed is to take effect, the fact he retains possession of the document and does not deliver it to the grantee, or another person for his use, is immaterial. (See Scrugham v. Wood (N.Y.Sup.Ct.1836), 15 Wend. 545, 546.) Moreover, delivery can be made to one grantee for the benefit of all. See Herrmann v. Jorgenson (1934), 263 N.Y. 348, 353-54, 189 N.E. 449, 450-51.
In Williams v. Ellerbe (1969), 62 Misc.2d 827, 828-29, 310 N.Y.S.2d 60, 61-62, the grantor executed a deed to himself and his daughter in joint tenancy, after which the deed was given to his attorney with instructions to record it, although the attorney failed to do so. The court held that the attorney received the deed as the agent for both grantees, noting that delivery is complete when the grantor unconditionally hands the deed to a third person, even the grantor's attorney, and even though the grantee is unaware of the delivery. Williams, 62 Misc.2d at 828-29, 310 N.Y.S.2d at 61-62.
The court here found the deed insufficient as a voluntary inter vivos conveyance because it was not delivered during the lifetime of the grantors. However, as in Williams, *21 we do not view as relevant the fact that respondent may not have received physical possession of the deed until the death of her parents. Attorney Flint testified that decedent and his wife came to his office on December 18, 1986, because they wanted respondent to "end up with the ownership of their Chatham property" and he explained to them that the deed would transfer the property to both of them and their daughter jointly, and the survivor would retain sole ownership. The attorney stated that it was clear to him decedent understood what was going to be accomplished by execution of the deed and was determined to accomplish what the deed purported to do. Bertha later told respondent her name had been added to the deed. These facts evidence an intent by the grantors that the deed be legally operative. When the grantors executed the deed in their attorney's office conveying title to themselves and respondent as joint tenants, left it with him, and it was recorded, delivery was effected. It is difficult to see any purpose in recording the deed under these circumstances, if it was not intended to operate as a conveyance. "[I]t has frequently been held that a delivery of a deed to the proper recording officer to be recorded, if intended to vest the title immediately or absolutely in the grantee, either as a trustee or otherwise, is a valid delivery; if not afterwards dissented from by the grantee." Munoz, 111 N.Y. at 304, 18 N.E. at 859.
Petitioners cite Manhattan Life Insurance Co. v. Continental Insurance Co. (1974), 33 N.Y.2d 370, 372, 308 N.E.2d 682, 683, 353 N.Y.S.2d 161, 162, for the view that when delivery is made to a third person for later conveyance to the grantee, delivery to the grantor's own exclusive agent is not sufficient to transfer title. In that case, the court held that delivery of an executed deed to the grantor's attorney with instructions that it was "`to be held by him'" without any instructions as to whether the deed was to be recorded or released to the grantee, was ineffective to convey title. (Manhattan, 33 N.Y.2d at 372, 308 N.E.2d at 683, 353 N.Y.S.2d at 162-63.) Similarly, in Rochester Savings Bank v. Bailey (1901), 34 Misc. 247, 248, 69 N.Y.S. 163, 164, the court held that depositing a deed with the grantor's own agent, his attorney, for delivery to the grantee upon the grantor's death was ineffective to pass title because the grantor never parted with control and could have revoked the deed at any time. In this case, since attorney Flint was the agent for decedent and Bertha as grantors, he was necessarily their agent as grantees, and delivery of the deed to them was effective for the benefit of all the grantees, including respondent. (See Williams, 62 Misc.2d at 828-29, 310 N.Y.S.2d at 61-62.) In contrast to the facts in Rochester, the recording of the deed effectively removed the grantors' ability to treat the deed as a legal nullity. Moreover, given the presumption of delivery which lies upon recordation, petitioners failed to offer any showing it was not the intent of the grantors to have the deed recorded. The trial court found the presumption of delivery arising upon recordation dissipated by the grantors' retention of exclusive possession and control of the property, payment of all expenses and retention of all benefits of the property. In this instance, however, as the grantors retained a joint tenancy interest in the property, the fact of their continued possession and enjoyment of the benefits of the property is not inconsistent with a present conveyance in joint tenancy with respondent and insufficient to refute the presumption arising upon recordation.
Although petitioners raise no issue regarding acceptance of the deed, the trial court found there had been neither delivery nor acceptance, but this conclusion may only have resulted from its finding of a failure of delivery. It is well established that acceptance of the delivery is presumed if the conveyance is beneficial, as here. (Saltzsieder, 219 N.Y. at 530, 114 N.E. at 858; Williams, 62 Misc.2d at 829, 310 N.Y.S.2d at 62.) That portion of the judgment ordering respondent to execute a quitclaim deed in favor of the estate is reversed.
Petitioners cross-appeal from the court's finding that decedent was not incompetent at the time of execution of the deed on December 18, 1986. Under New York law, there is a presumption that the grantor of a deed is sane and the fact that he is subsequently adjudged incompetent in and by itself *22 does not necessarily overcome this presumption. (Broat v. Broat (N.Y.Sup.Ct. 1940), 18 N.Y.S.2d 709, 713.) Competence to execute a deed is assumed, and the party asserting to the contrary must prove the lack of ability by a preponderance of the evidence. (Jones v. Jones (1893), 137 N.Y. 610, 612-13, 33 N.E. 479, 480.) To avoid the effect of an executed deed, "it is not enough to show that the grantor was old and feeble, that he had certain eccentricities, that he was forgetful and that his mental faculties were somewhat impaired. It must be shown that he was `wholly, absolutely, and completely unable to understand or comprehend the nature of the transaction.'" Broat, 18 N.Y.S.2d at 712-13, quoting Aldrich v. Bailey (1892), 132 N.Y. 85, 87-88, 30 N.E. 264, 265.
Petitioners presented testimony from four professional witnesses and six lay witnesses, together with medical reports from and after late November 1988. None of the medical records, nor any of the professional witnesses related observations of the decedent for any time prior to November 1988, almost two years after execution of the deed. Two of the medical experts' opinions were based either on the post-mortem autopsy, or on the medical records and written observations of others. Dr. Kowall, who performed the autopsy, made a post-mortem diagnosis of Alzheimer's disease and multiple cerebral infarctions, one of which occurred in 1989. Kowall stated that the lay observations relied on by the petitioners' expert, Dr. Rosenbaum, were not conclusive of Alzheimer's and could be explained by other causes. He concluded there was nothing in the autopsy results which would rule out the possibility that clinical dementia could have begun within two years prior to death (at least six months after execution of the deed) and it was not possible to form an opinion on competency in December 1986 without direct observation by the physician.
Dr. Rosenbaum, who formed an opinion based on medical and lay reports, concluded that decedent possessed all of the symptoms of Alzheimer's and concluded the disease began in the early 1980's and progressed until his demise in June 1989. Based on the written statement of a neighbor who indicated that decedent had wandered off his property and not known where he was, that he later remained in the house and would not go out, that he was incontinent for the last four years and could not carry on a normal conversation, and that he seldom bathed and did not recognize his grandchildren, Dr. Rosenbaum concluded decedent was absolutely and wholly incompetent in December 1986.
Petitioners' lay witnesses were decedent's son, George, George's wife and daughter, and neighbors of the decedent. George testified that his father had always held eccentric religious and political views and their discussions were loud because his father was hard of hearing. His father always washed but did not wear deodorant and wore casual clothing. George and his wife and daughter moved abroad in early 1983 but returned for a visit in 1984 when his daughter got married. Decedent refused to attend the wedding and during the two- to three-hour visit was not communicative. George next saw his father in September 1986, when he was again quiet, but George attributed this to his father's anger with him, and he did not believe it was anything serious. When George next saw his father in 1988, he described him as quiet and unkempt. George's daughter testified she visited decedent in 1985 and at that time he failed to recognize her, and told her husband that blocks of ice would fall on different parts of the world, a theory she did not believe was inconsistent with decedent's end-of-the-world religious beliefs. Decedent laughed hysterically when she told him she was leaving for Washington, D.C. When the witness saw him again in the spring of 1987 or 1988, decedent looked extremely unkempt and the house smelled of urine, but she was not sure if the odor was caused by the dogs. George's wife testified that sometime during 1980, decedent did not recognize her as she walked outside and described his behavior during 1986 as totally withdrawn.
Decedent's neighbors testified that Bertha had someone stay with decedent when she attended family events, decedent's hygiene and grooming had been deteriorating for at least 1½ years before he moved to Illinois in late 1988, and he burned the pots when he tried to make tea or coffee.
*23 Respondent's four children testified in her behalf. All testified that during their visits in 1985, 1986, and 1987, their grandfather behaved in his normal fashion. In September 1986, one of the granddaughters heard the decedent reading his bible in both English and German late into the night, although decedent failed to recognize his grandson in August 1987 when he returned from the military. Decedent's niece testified that she visited him on the day he executed the deed, December 18, 1986, that he looked his usual self and did not exhibit any bizarre behavior. After he returned from his attorney's office she saw him driving the tractor and splitting wood. Attorney Flint testified that decedent's statements were rational and coherent and he exhibited no bizarre behavior.
Based on the foregoing evidence, the trial court's finding of a failure to prove incompetency was not against the manifest weight of the evidence. Accordingly, the trial court's order finding decedent competent at the time of execution of the deed is affirmed, and that part of the order finding a failure of delivery of the deed is reversed.
Affirmed in part; reversed in part.
COOK and LUND, JJ., concur.