VICTOR T. WOOD *et al.*, Plaintiffs-Appellants, v. SANDRA D. WOOD, Defendant-Appellee.

Fourth District   No. 4—95—0945

Argued May 15, 1996.—Opinion filed November 6, 1996.

David B. Radley (argued), of Baymiller & Radley, of Peoria, for appellants.

Joan C. Scott (argued), of Ewing & Scott, of Lewistown, for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Victor and Emily Wood are the parents of George Wood. They brought this forcible entry and detainer action to evict Sandra Wood (their daughter-in-law) from the home in which she and George had both lived until she obtained an order of protection against him. Victor and Emily claim a right to possession through a quitclaim deed George executed and gave them two days before the marriage. The deed was given in exchange for their forgiveness of a debt George owed them. The trial court found the sale a sham, held title never passed from George to his parents, and accordingly entered judgment for Sandra on the forcible entry and detainer action. Victor and Emily appeal. We affirm.

## I. BACKGROUND

George and Sandra Wood were first married in October 1990 and divorced in March 1995. George received sole possession and ownership of their residence in that dissolution. On April 20 or 21, approximately six weeks later, Sandra moved back in with George and agreed to remarry him. She testified she only did so because it was easier than enduring the constant harassment to which George was subjecting her. They remarried on April 28.

However, two days before the remarriage, George was fired. That same day he executed a quitclaim deed conveying the residence to Victor and Emily. George signed the deed before a notary public, who completed an acknowledgment clause. Both the deed and the acknowledgment clause were executed in the presence of Victor and Emily. After the documents were filled out, George gave Victor and Emily the deed, and they took it home and put it in their safe. Neither ever visited the house after they bought it; Victor testified that he could not enter the house because "[t]he judge wouldn't let [him]."

The deed was not recorded until June 12. Victor testified he waited to file the deed because the mortgage on the property provided that title could not be transferred until the mortgage was paid off, and the delay was caused by the processing time for him to get a home equity loan on his home with which to pay off George's mortgage. George and his parents testified that in exchange for the

house they agreed to pay the approximately $8,000 balance due on the mortgage and forgave a debt of over $8,000 he owed them.

Victor testified he and George further agreed that George and Sandra would rent the house from him and would start paying rent when George found work. George had not done so by August 22, the date of the hearing in this case. George testified he did not know when he was going to start paying rent, nor how much the rent would be. He said there was an understanding that Victor would never rent the house to anyone else as long as George was living there with Sandra. However, he said Victor *could* have evicted him at any time after April 26.

Sandra testified that before their remarriage George told her that once they married the house would be theirs together, and he never mentioned having sold the house to his parents. She also testified that on May 19, she and George went to Heights Finance Company and paid the mortgage payments for May and June. George admitted he took Sandra to make a payment on that date and that he had sold his Corvette to come up with the money.

On June 2, Sandra obtained an emergency order of protection against George, which, *inter alia*, granted her exclusive possession of their residence. Sandra signed a criminal complaint against George for violation of the order at some point after June 2. She was unsure of the exact date on which she did so, but remembered it was very near the time his parents first started attempting to evict her.

Victor and Emily served Sandra with a "Landlord's Seven[-]Day Notice of Termination of Tenancy" on June 14. On July 6, they served her with a "Demand for Possession of Premises." On July 19 they filed the instant complaint under the Forcible Entry and Detainer Act (735 ILCS 5/9—101 *et seq.* (West 1994)). The complaint admitted Sandra came upon the premises peaceably but alleged she was in possession without permission, by lease or otherwise, paid no rent, and "wrongfully withholds possession from the Plaintiffs."

There was a hearing on Victor's and Emily's complaint on August 22. Victor and Emily asserted ownership and right to possession through the quitclaim deed, while Sandra defended on the grounds the alleged sale from George to his parents was a "fraud and sham," because there was no intent that ownership truly pass. In addition to testimony by Victor, Emily, George, and Sandra, James Hutchinson testified that on July 3 George showed him some sort of deed relating to the residence in question, and said it was George's house, and he was going to get it back. He did not know the date on the paper. The trial court, after hearing the evidence, directed the parties to submit closing arguments in writing and informed them that its opinion was

that the outcome of the case depended on the validity of the transaction between George and his parents. It prevented Sandra from inquiring into Victor's knowledge of George's alleged physical abuse of Sandra, which it deemed irrelevant.

After receiving Sandra's closing argument (Victor and Emily did not submit one), the court ruled in her favor, finding:

> "[T]he evidence fails to establish by a preponderance of the evidence that the purported grantor, George Wood, had any intent to convey legal title to the premises at the time of execution of the quit claim deed, but rather executed such in an attempt to protect his interest in the property in the event his impending remarriage to the Defendant failed[.]"

It continued by labeling the transaction a "sham," which "[b]oth law and equity dictate *** cannot be utilized to evict the Defendant from the premises herein." Victor and Emily appeal.

## II. ANALYSIS

The trial court erred in its conclusion that there was no valid transfer of title from George to his parents. We nonetheless affirm the result—that Sandra prevails in this forcible entry and detainer action—because we find that eviction would violate Sandra's order of protection. It is not necessary to resolve the rights of Victor and Emily between themselves and George in order to protect the rights of Sandra. As a reviewing court, we may sustain a decision on any grounds called for by the record, regardless of the original basis for the decision and regardless of the accuracy of its reasoning. *Leonardi v. Loyola University*, 168 Ill. 2d 83, 97, 658 N.E.2d 450, 457 (1995).

### A. Validity of Deed

It was proper for the trial court to consider the validity of the deed. While forcible entry and detainer proceedings "determine which party has a right to possession of and not title to real estate" (*Noe v. Clemons*, 174 Ill. App. 3d 223, 230, 528 N.E.2d 257, 262 (1988)), equitable defenses may be raised if "germane" to the action (*Rosewood Corp. v. Fisher*, 46 Ill. 2d 249, 256-57, 263 N.E.2d 833, 838 (1970)). This rule extends to allowing determination of ownership. *Rodriguez v. Owaynat*, 137 Ill. App. 3d 1017, 1022, 485 N.E.2d 438, 442 (1985). However, we find the court erred in concluding that the deed was not effective. We may be critical of George's motives in arranging the transfer, but the transfer was not a sham.

■ George had the right to transfer the property, whatever his motives. In Illinois, the general rule is that an owner of property has an absolute right to dispose of his property during his lifetime in any manner he sees fit. *Johnson v. La Grange State Bank*, 73 Ill. 2d 342,

357, 383 N.E.2d 185, 192 (1978). This rule holds even when the transfer is conducted in order to minimize or defeat a spouse's statutory marital ownership interests under the Probate Act of 1975 (see 755 ILCS 5/2—1(a), (c) (intestate share of surviving spouse), 2—8(a) (renunciation of will by spouse) (West 1994)) in the property conveyed. *Johnson*, 73 Ill. 2d at 357, 383 N.E.2d at 192. Even where property titled in the name of one spouse might be considered marital property, the titleholder has complete power to dispose of that property during the marriage as he or she sees fit. *Kujawinski v. Kujawinski*, 71 Ill. 2d 563, 573, 376 N.E.2d 1382, 1386 (1978) ("[o]peration of the term 'marital property' under the Act is not triggered until the time of dissolution"). The fact that the titleholder has represented to his spouse that the property will be marital does not deprive him of that power. The transfer of property, even nonmarital property (see 750 ILCS 5/503(d)(2) (West 1994); *In re Marriage of Cecil*, 202 Ill. App. 3d 783, 791, 560 N.E.2d 374, 379 (1990)), for inadequate consideration may constitute dissipation, and it may be possible to enjoin an attempted dissipation of assets, but that is not an issue in this case. The only issue in this case is whether Sandra, or Victor and Emily, have a superior right to possession. It is irrelevant whether we would characterize George's motives as improper so long as he actually intended to make a transfer and did not intend the transfer to be one in form only. See *Johnson*, 73 Ill. 2d at 359, 383 N.E.2d at 193. An intention to protect the property in the event the impending remarriage failed does not render the transfer a sham.

We see no reason George could not sell the house to his parents even after the order of protection had been entered. The sale itself was not an eviction. Rather, the eviction was instituted by George's parents and was a separate action from the transfer of title. Section 214(b)(2) of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/214(b)(2) (West 1994)) explicitly states that orders of protection which issue thereunder will not affect title to real estate.

■ Given that George had the right to transfer the property, the next question is whether he in fact did so. To be valid a deed must be both executed and delivered. Whether a deed has been delivered is a question of the grantor's intent, as "manifested by his acts or words and determined by the facts and circumstances at the time and subsequent to the alleged delivery." *In re Estate of Rohrer*, 269 Ill. App. 3d 531, 536, 646 N.E.2d 17, 20 (1995). The trial court found no delivery because Victor and Emily never "exercise[d] any evidence whatsoever of ownership," and George continued to do so. This ignores several uncontroverted facts which weigh heavily in favor of finding delivery. First, George physically gave the only original copy

of the deed to his parents immediately after it was filled out. Second, a notary public executed an acknowledgment clause in the deed which stated George "signed, sealed and delivered" the deed that day. Third, Victor and Emily did eventually record the deed. This forcible entry and detainer action is not the appropriate case to discuss the weight and rebuttal of presumptions of delivery, but we find the trial court erred in finding the deed not to have been delivered in this case in light of these facts.

## B. Forcible Entry and Detainer

■ Our finding Victor and Emily have title to the property does not end the case. The question remains whether they had the right to evict Sandra. We find they did not.

Before the eviction was commenced, Sandra had obtained an emergency order of protection against George which granted her exclusive possession of the house. Under section 214(b)(2) of the Act, a petitioner may be granted exclusive possession of a residence if he or she has a right to occupancy thereof. 750 ILCS 60/214(b)(2) (West 1994). A party has a right to occupancy if, *inter alia*, the residence is "solely or jointly owned or leased by that party[ ] [or] that party's spouse." 750 ILCS 60/214(b)(2)(A) (West 1994). The order granting exclusive possession was proper even if George and Sandra were leasing the property. The provisions of the Act are to be liberally construed and applied to promote its underlying purposes, which include helping victims of domestic violence to avoid further abuse because of fear of retaliation or loss of accessible housing. 750 ILCS 60/102(4) (West 1994).

■ Clearly, if George had never deeded the house to his parents and had himself brought a forcible entry and detainer action against Sandra, he would have been unsuccessful. The question before us is whether George can successfully violate the order of protection by enlisting the aid of Victor and Emily. For purposes of issuing and enforcing orders of protection, article 5 of the Criminal Code of 1961 applies (720 ILCS 5/5—1 through 5—5 (West 1994)). 750 ILCS 60/216 (West 1994). Under article 5, a person is accountable for the conduct of another when, "with the intent to promote or facilitate such commission," he aids in the commission of the offense. 720 ILCS 5/5—2(c) (West 1994). If Victor and Emily intentionally aided George in his violation of the order of protection, they are equally guilty of violating that order.

If George had mortgaged the property to a bank, knowing that the bank would foreclose and that Sandra would be evicted, the bank would not be barred from foreclosure. The bank would not be acting

with the intent to promote or facilitate any violation of the order of protection. The bank would be acting only to protect its own interests and would be indifferent to the effect of its actions on Sandra. In a different factual setting, Victor and Emily might be considered to be much like an independent third-party bank, with the intent to protect only their own interests, and no intent to assist George in a violation of the order of protection.

The trial court found the transaction between George and his parents was a sham. It seems clear the court considered George and his parents to have been acting with the same intent, although it did not explicitly so hold. It is appropriate to regard transactions between a spouse and his or her parents with some degree of skepticism. *Hofmann v. Hofmann*, 94 Ill. 2d 205, 222, 446 N.E.2d 499, 506 (1983); *In re Marriage of Schmidt*, 242 Ill. App. 3d 961, 968, 610 N.E.2d 673, 678 (1993) (noting the incentive "for both sides of the transfer, the parents making it and the litigant receiving it, to conform their testimony to the disadvantage of the other litigant"). Accordingly, we hold that Victor and Emily are bound by the order of protection granting Sandra exclusive possession just as George is bound by that order. As Sandra's right to possession is superior to that of Victor and Emily, the trial court properly entered judgment for Sandra in the forcible entry and detainer action.

■ Even if Victor and Emily acted independently of George, such that they could not be accountable for George's actions, Sandra might have a valid defense of retaliatory eviction. Retaliatory eviction is a legitimate defense to forcible entry and detainer. *Clore v. Fredman*, 59 Ill. 2d 20, 26-27, 319 N.E.2d 18, 21-22 (1974); *People ex rel. Department of Transportation v. Walliser*, 258 Ill. App. 3d 782, 791, 629 N.E.2d 1189, 1196 (1994), *appeal denied*, 157 Ill. 2d 520, 642 N.E.2d 1301 (1994). To date, the retaliatory eviction defense has generally been recognized in the context of a landlord's retaliation for a tenant's complaints to governmental authorities regarding building codes, based on the Retaliatory Eviction Act (Eviction Act) (765 ILCS 720/0.01 through 1 (West 1994)). However, Illinois has never decided the defense is limited to that recognized in the Eviction Act. *Seidelman v. Kouvavus*, 57 Ill. App. 3d 350, 354, 373 N.E.2d 53, 56 (1978). The *Seidelman* court noted the "possibility that circumstances may arise, in future cases, where a landlord's action in seeking to evict a tenant would be so invidiously motivated and would so contravene the public policy of our State that we would not permit our courts to implement the eviction in a forcible entry and detainer proceeding." *Seidelman*, 57 Ill. App. 3d at 354-55, 373 N.E.2d at 57. It violates public policy to evict a woman from her home merely because she got an

order of protection against her husband who was physically abusing her.

Mobile home landlords are expressly prohibited from evicting tenants in response to any "effort[s] to secure or enforce any rights under *** the laws of the State of Illinois" (765 ILCS 745/16(a) (West 1994)), but the legislature has not affirmatively extended this protection beyond mobile homes (see 765 ILCS 720/1 (West 1994)). Section 102 of the Act explicitly notes one of the Act's purposes is to prevent victims of domestic abuse from being "trapped in abusive situations by fear of *** loss of accessible housing or services." 750 ILCS 60/102(4) (West 1994). It might be that Sandra has a valid defense of retaliatory eviction even if Victor's and Emily's suit was not prompted by George, if their reason for bringing it was her exercise of her rights under the Act.

Victor and Emily complain that upholding the trial court's result would in effect "grant[ ] [Sandra] permanent possession of the house rent-free." A plenary order of protection may endure at most for two years (750 ILCS 60/220(b) (West 1994)), and Victor and Emily's concern about rent is legitimate. However, they did not request rent in this action, only recovery of possession. Victor testified he had intended to allow George and Sandra to retain possession rent-free until George found a job. We express no opinion whether Victor and Emily are entitled to receive rent, nor whether George or Sandra would be the more appropriate party to be charged with paying it.

## C. Standing and Fraud

■ We find no merit to the other two objections Victor and Emily raise on appeal. Their claim that Sandra lacks standing to challenge the deed was waived when it was not raised before the trial court (*Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 508, 524 N.E.2d 561, 582 (1988)) and, further, is meritless. As noted, while a forcible entry and detainer suit is not the appropriate forum to try title, the deed was the basis for their claim of possession, and Sandra had the right to inquire into its validity.

■ Victor and Emily argue that fraud is an affirmative defense which must be specifically pleaded, that Sandra did not do so, and she should have been prevented from raising it. We are not convinced that Sandra's defense was fraud, but we need not decide that question. Supreme Court Rule 181(b)(2) provides that the defendant in forcible entry and detainer actions need not file an answer unless ordered by the court, and when no answer is ordered, "any defense may be proved as if it were specifically pleaded." 134 Ill. 2d R. 181(b)(2). There being no indication the court requested Sandra to file

an answer, there is no reason she could not attempt to prove a defense of fraud.

## III. CONCLUSION

For the reasons above stated, we affirm the judgment of the circuit court of Mason County.

Affirmed.

STEIGMANN and KNECHT, JJ., concur.