AMERICAN MANAGEMENT CONSULTANT, LLC, *et al.*, Plaintiffs-Appellees, v. GEANIECE D. CARTER, Defendant-Appellant.

Third District No. 3—07—0714

Opinion filed June 16, 2009.

WRIGHT, J., specially concurring, joined by SCHMIDT, J.

Geaniece D. Carter, of Romeoville, appellant *pro se*.

Wayne Shapiro and M. Anne Hannigan, both of Law Office of Wayne Shapiro, of Chicago, for appellees.

JUSTICE McDADE delivered the judgment of the court and the following opinion:

Plaintiff, American Management Consultants LLC, filed a

complaint against defendant, Geaniece Carter, pursuant to section 9—209 of the Illinois Code of Civil Procedure (the Code) on forcible entry and detainer (735 ILCS 5/9—209 (West 2006)) seeking past-due rent, utilities, and late charges totaling $1,002.73; possession of apartment 316C in Riverstone Apartments, 308 Woodcreek Drive, Bolingbrook, Illinois; and attorney fees and costs. Following a hearing, the circuit court of Will County entered judgment in favor of plaintiff and awarded it $1,190.62 in unpaid rent for the months of July 2007 and August 2007, including a $35 late charge for August rent; $500 attorney fees; and $203 costs; and it also ordered that defendant turn over possession of the apartment to plaintiff within two weeks. The court denied plaintiff's request for unpaid utilities. For the reasons that follow, we reverse.

## BACKGROUND

The parties entered a 12-month written lease agreement in March 2007 for apartment 316C in plaintiff's apartment complex in Bolingbrook. The lease agreement stated defendant's monthly rent as $675 per month. The agreement also provided that in consideration for entering a 12-month lease, plaintiff granted defendant a deduction of $112 per month from the rent from March 2, 2007, until March 31, 2008, on the condition defendant paid each month's rent in full on or before the fifth day of each month. The lease also provided that if defendant failed to tender the full month's rent by the fifth day of each month, defendant agreed to pay plaintiff an additional $75 plus $5 on the sixth day and each additional day rent remained unpaid in full. The parties' agreement defined these charges as additional rent. The lease provided that defendant was liable for all utility charges attributable to defendant's apartment and that defendant must pay those charges immediately upon receipt of an invoice or other written demand for payment.

Occupants of plaintiff's property did not receive direct utilities bills from the service providers. Plaintiff provided occupants of its apartments a monthly statement of the rent due for that month and for the utility charges attributable to the occupants' apartments. Plaintiff provided defendant a statement of her rent and utilities charges for the months of March, April, and May 2007 that did not include the deduction granted defendant in consideration for entering a 12-month lease. Defendant deducted the appropriate amount ($112) from the total charges stated on the March, April, and May statements of charges and tendered the reduced amount. Those rent payments were accepted by plaintiff.

In June 2007, defendant received a statement of charges for her rent and utilities that included a deduction of $101.76 as a "relocation credit." Plaintiff intended this "relocation credit" to reflect the deduction granted in consideration of entering a 12-month lease but stated an incorrect amount. It appears that defendant deducted the discount from the total charges stated on the monthly notice as she had in previous months and tendered that amount plus utilities for a total of $533.62 as full payment to plaintiff on June 5, 2007. Rhonda Banks, plaintiff's assistant manager for Riverstone Apartments, testified that defendant failed to pay the full amount due for June. Banks testified that as of June 2007, plaintiff had changed its billing practice. She admitted that defendant's June statement contained an error. However, she testified, the statement of charges also states that any errors did not absolve the tenant of his or her obligation to pay all charges in a timely fashion.

On June 13, 2007, defendant received a notice plaintiff posted on the door of defendant's apartment demanding payment of $201.52 by June 13, 2007, or $211.52 by June 15, 2007. The notice defendant received on June 13 stated that plaintiff previously provided defendant with notice to pay rent or quit the apartment within five days pursuant to section 9—209 of the Code (735 ILCS 5/9—209 (West 2006)). Defendant later testified she never received the five-day notice referenced in the June 13 demand for payment.

On June 14, 2007, defendant contacted plaintiff and spoke to Sylvia, plaintiff's property manager. Sylvia informed defendant that the landlord had erred in stating the amount of the deduction in her June 2007 statement of charges but asserted that she had the responsibility to correct plaintiff's error and, therefore, she owed plaintiff an additional $101.76 for June rent plus late charges. Banks testified that the late charges at that time totaled $195. Defendant responded by reminding Sylvia that plaintiff caused her failure to pay the full amount due and stating that she should not be liable for late charges occasioned by plaintiff's error. Defendant also offered to pay $91.53 representing the actual amount defendant still owed taking into consideration the correct monthly deduction but not including any late fees. Banks agreed that the actual balance due for June was $91.52.

Sylvia declined defendant's offer and reasserted that defendant had to pay the late charges to resolve the issue. To this defendant responded by suggesting the matter be resolved in legal proceedings that could also address defendant's ongoing concerns over plaintiff's utilities billing practices.

Defendant testified that before entering the lease agreement, plaintiff informed her that she would receive bills for water and gas

utilities directly from the utilities providers. Plaintiff allegedly informed defendant that those monthly bills would state the amount of defendant's use of those utilities each month and a statement of the charges per unit of use. Defendant's first utility bill for March 2007 stated only a flat charge and did not include a statement of how the utility company determined that amount. Defendant contacted the utility provider and requested a statement of her usage and its calculations of her charges based on usage. The provider informed her that it did not have that information because it only sorted billing information plaintiff sent it. The provider suggested defendant contact plaintiff for a statement of her usage.

Defendant testified that she next contacted the City of Bolingbrook. The city informed her that plaintiff receives one water bill for the entire apartment complex. Defendant contacted plaintiff to request an explanation of how it apportioned charges for utilities. Plaintiff failed to respond to defendant's requests until defendant threatened to contact an attorney regarding her lease and state laws covering utilities billing. Thereafter, defendant met with Sylvia, who informed defendant that plaintiff did not meter occupants' water and gas usage and that all tenants pay the same amount for water and gas regardless of the amount of each tenant's actual use.

On June 20, 2007, defendant received a notice plaintiff posted on the door to defendant's apartment demanding payment of $276.52 in unpaid rent and late fees. The notice informed defendant that plaintiff would refuse to accept payment of July rent if defendant failed to pay that amount. On July 5, 2007, defendant attempted to pay plaintiff July rent. Sylvia returned defendant's tendered check. At that time Banks informed defendant that plaintiff was demanding payment of $907.73 for July rent ($563 including deduction), utilities ($58.21), and late fees ($200). On July 10, defendant received a third notice plaintiff posted on the door to defendant's apartment demanding payment of $1,002.73 within five days. Defendant did not pay. The notice stated that plaintiff posted it on the door to defendant's apartment with "no one being in actual possession thereof." Defendant testified that as of July 10 she still lived in the apartment. Banks testified that as of the date of the hearing, defendant remained in possession of the apartment.

On July 20, 2007, defendant received a fourth notice posted on the door to her apartment demanding payment of $1,057.73 by July 21. Defendant filed a complaint with the police department accusing plaintiff of harassment. On August 11, defendant filed a complaint with the Bolingbrook police department stating that someone had entered her apartment without permission. Defendant testified that

she informed plaintiff that its staff persistently entered her apartment without permission. She reported that she returned home to discover food eaten and that someone had been through her property.

Plaintiff responded by informing defendant that it employed a system to prevent anyone from obtaining keys to tenants' apartments without authorization. Defendant testified that Sylvia later conceded that a painter had entered defendant's apartment on April 15. Defendant testified that prior to that date she installed a motion detector in her apartment. Defendant testified that the painter removed the motion detector from the wall, removed its batteries, and placed them on a table. In another instance, defendant encountered someone attempting to enter her apartment on June 20. When defendant confronted him, he informed defendant that he was performing pest control. Defendant testified that plaintiff never informed her these contractors would be entering her apartment.

Defendant informed plaintiff that she refused to pay any charges for August because plaintiff had refused her tender of payment for July charges and defendant refused to pay any late fees. On August 12, 2007, defendant received a summons to appear on plaintiff's complaint in the circuit court of Will County seeking $1,002.73 for rent for June and July 2007, utilities, and late fees. The circuit court of Will County entered judgment in plaintiff's favor. This appeal followed.

## ANALYSIS

On appeal, defendant argues that plaintiff violated the Illinois Landlord and Tenant Act (765 ILCS 705/0.01 et seq. (West 2006)) and the Federal Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. §1692 (2006)) by failing to properly serve notice of its demands for payment. Defendant also argues that the circuit court of Will County's judgment is erroneous in that it includes judgment for August 2007 rent for which plaintiff never served notice to pay pursuant to the Landlord and Tenant Act or the Fair Debt Collection Practices Act and which was not included in the summons served on defendant. Finally, defendant argues that plaintiff violated the Retaliatory Eviction Act (765 ILCS 720/1 et seq. (West 2006)) by initiating forcible entry and detainer proceedings only after she sought to remedy the parties' dispute in legal proceedings and after defendant initiated various complaints against plaintiff.

### A. Defendant's Allegations of Plaintiff's Alleged Violations of the Landlord and Tenant Act

■ Defendant asserts that she offered to pay the full amount she owed plaintiff for the months of June and July but plaintiff refused

and that plaintiff's refusal precludes judgment in its favor under section 9—209 of the Code. Section 9—209 of the Code reads as follows:

"A landlord or his or her agent may, anytime after rent is due, demand payment thereof and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, not less than 5 days after service thereof, the lease will be terminated. If the tenant does not within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended, and sue for the possession under the statute in relation to forcible entry and detainer, or maintain ejectment without further notice or demand. A claim for rent may be joined in the complaint, and a judgment obtained for the amount of rent found due, in any action or proceeding brought, in an action of forcible entry and detainer for the possession of the leased premises, under this section.

Notice made pursuant to this Section shall, as hereinafter stated, not be invalidated by payments of past due rent demanded in the notice, when the payments do not, at the end of the notice period, total the amount demanded in the notice. The landlord may, however, agree in writing to continue the lease in exchange for receiving partial payment. To prevent invalidation, the notice must prominently state:

'Only FULL PAYMENT of the rent demanded in this notice will waive the landlord's right to terminate the lease under this notice, unless the landlord agrees in writing to continue the lease in exchange for receiving partial payment.'

Collection by the landlord of past rent due after the filing of a suit for possession or ejectment pursuant to failure of the tenant to pay the rent demanded in the notice shall not invalidate the suit." 735 ILCS 5/9—209 (West 2006).

Defendant cites *Madison v. Rosser*, 3 Ill. App. 3d 851, 279 N.E.2d 375 (1972), for the proposition that her offer to pay the full amount *lawfully* demanded in plaintiff's notice pursuant to section 9—209 of the Code precludes judgment in its favor in a forcible entry and detainer action. In *Rosser*, the court found that the evidence proved that the "defendant did tender to plaintiff the amount due" as stated in the plaintiff's five-day notice to the defendant but the plaintiff refused the tender because he wanted the defendant out. *Rosser*, 3 Ill. App. 3d at 852, 279 N.E.2d at 375-76. The court held that having offered to pay the full amount due, the defendant's "obligation under the notice was then satisfied." *Rosser*, 3 Ill. App. 3d at 852, 279 N.E.2d at 376. The court ruled that any "reason given by plaintiff for refusing the tender of rent is immaterial. Plaintiff could not predicate a forcible entry and detainer action on the ground that defendant had

not complied with the terms of the notice." *Rosser*, 3 Ill. App. 3d at 852, 279 N.E.2d at 376.

Defendant argues that the meaning of "rent" as used in section 9—209 covers only the "consideration paid for the use or occupation of the property" and not additional charges for utilities and late fees. She concedes that plaintiff's demand included additional amounts (for utilities and late fees) but asserts that because she offered to pay the full amount of the actual rent and only refused to pay the late fees, then pursuant to *Rosser* she satisfied her obligation under section 9—209 and plaintiff is not entitled to judgment in its favor.

As evidence that plaintiff illegally sought to collect utilities payments, defendant interprets the parties' agreement not to contain any provision that she is required to make payment for utilities directly to plaintiff. Specifically, the agreement provides as follows:

> "Resident agrees to be responsible for all utilities charged or attributable to the use of the Resident's apartment ***. Resident(s) understand and acknowledge that none of these services are separately metered and are administered by the respective utility or billing companies.
>
> ***
>
> Resident shall be solely responsible for all utility services charges attributed to the apartment Resident occupies and Resident shall pay such charges immediately upon receipt of an invoice or other written demand for payment."

For the proposition that defendant's "rent" did not include utilities defendant also cites section 5 of the Tenant Payment Utility Disclosure Act (Utility Disclosure Act) (765 ILCS 740/5(a) (West 2006)) as evidence that plaintiff's attempt to collect utilities was unlawful. Section 5 of the Utility Disclosure Act provides, in pertinent part, as follows:

> "(a) No landlord may demand payment for master metered public utility services pursuant to a lease provision providing for tenant payment of a proportionate share of public utility service without the landlord first providing the tenant with a copy in writing either as part of the lease or another written agreement of the formula used by the landlord for allocating the public utility payments among the tenants. *** The landlord shall also make available to the tenant upon request a copy of the public utility bill for any billing period for which payment is demanded. Nothing herein shall preclude a landlord from leasing property to a tenant, including the cost of utilities, for a rental which does not segregate or allocate the cost of the utilities." 765 ILCS 740/5(a) (West 2006).

Defendant asserts she requested plaintiff provide her with a metered bill as well as an explanation of how it allocated utilities but that

plaintiff refused. Defendant also relies on the court's decision in *Payne v. Coates-Miller, Inc.*, 52 Ill. App. 3d 288, 367 N.E.2d 406 (1977), for the proposition that five-day notices pursuant to section 9—209 that include charges other than for rent are ineffective.

The *Payne* court did not reach the issue defendant frames before this court. In *Payne* the trial court "entered an order temporarily enjoining the assessment of costs, expenses and attorneys' fees in connection with late rent payments against the named plaintiffs and all other tenants residing in buildings managed and operated by defendant before a forcible entry and detainer judgment has been obtained against said persons." *Payne*, 52 Ill. App. 3d at 291, 367 N.E.2d at 409. The limited question presented to the *Payne* court, as relevant to the instant appeal, was whether the trial court abused its discretion in granting the temporary injunction because the plaintiffs' claims were moot when the injunction issued. *Payne*, 52 Ill. App. 3d at 291, 367 N.E.2d at 409. The court did not decide whether the trial court properly enjoined the defendant's practice. It held only that "the controversy over the practice is likely to recur," and, "[t]herefore, \*\*\* a real controversy existed and [the] claim was not moot." *Payne*, 52 Ill. App. 3d at 292, 367 N.E.2d at 410. (Ultimately the parties agreed to settle the case on the merits. *Payne v. Coates-Miller, Inc.*, 105 Ill. App. 3d 273, 274, 434 N.E.2d 306-07 (1982).)

In *Chicago Housing Authority v. Bild*, 346 Ill. App. 272, 274, 104 N.E.2d 666, 667 (1952), "[t]he sole question [was] whether the charge for excess use of electricity is rent within the meaning of statutes relating to landlord and tenant and forcible entry and detainer." The court rejected the defendant's argument that "the term 'rent' must be limited to the profit out of the lands and tenements and cannot include compensation for such services as electricity furnished the tenant, even though the parties by their agreement expressly include the furnishing of such services as a part of the consideration for the rent fixed in the lease." *Bild*, 346 Ill. App. at 275, 104 N.E.2d at 668. The court rejected the argument because "[t]he lease \*\*\* expressly provided that the *monthly rental* fixed therein included heat, hot water, gas for cooking, and electricity, and, as heretofore stated, made provision for the payment of additional sums *as rent* when electricity in excess of the amounts fixed by the lease for the respective months was used." (Emphasis added.) *Bild*, 346 Ill. App. at 277, 104 N.E.2d at 668.

Defendant attempts to distinguish *Bild* on the grounds that because the parties' agreement does not specifically define utilities payments as "rent," plaintiff cannot seek those amounts pursuant to a notice under section 9—209. We do not read *Bild* so narrowly. The

*Bild* court recognized that no public policy suggested "that the term 'rent' must be limited to the profit out of the lands and tenements and cannot include compensation for such services." *Bild*, 346 Ill. App. at 275, 104 N.E.2d at 667. The *Bild* court found that "courts recognize *** additional payments *as* rent for the use and occupancy of the premises." (Emphasis added.) *Bild*, 346 Ill. App. at 275, 104 N.E.2d at 667. Moreover, "[s]imilar provisions in respect to taxes, insurance premiums and repairs are recognized as valid provisions creating additional rent obligations on the lessee." *Bild*, 346 Ill. App. at 275-76, 104 N.E.2d at 667. The court found that Illinois also "recognize[d] provisions in leases for the payment of taxes as obligations for the payment of rent." *Bild*, 346 Ill. App. at 276, 104 N.E.2d at 667.

Finally, the court quoted a Texas court of civil appeals favorably as follows:

> " 'While rent is defined as the recompense for the use and occupancy of lands, "it is not confined solely to compensation for the use of the land, for chattels are often demised with the land, and form no inconsiderable portion of the consideration for which rent is paid." 12 Am. & Eng. Enc. Law, p. 730, and authorities cited. The statute giving a lien for the rent of "any residence, storehouse, or other building" does not change the above proposition of law, and the fact that the rent of a house might be increased by the furniture contained therein would not demand separation of the rent of the house unfurnished from the increase by reason of the use of the furniture.' " *Bild*, 346 Ill. App. at 276, 104 N.E.2d at 668, quoting S*tein v. Stely*, 32 S.W. 782, 783 (Tex. Civ. App. 1895).

Although plaintiff actually charged defendant for an equal share of the utilities bill for the entire property, the parties' agreement provided that defendant would only be responsible for her proportionate share. Therefore, defendant's proportionate share of the utilities bill is all that plaintiff was entitled to collect from defendant. Plaintiff violated section 5 of the Utility Disclosure Act by failing to provide defendant with the formula it used to determine defendant's proportionate share of the utilities. Even had the parties agreed that defendant was responsible for an equal share of the total utilities, plaintiff violated section 5 by failing to provide defendant with a copy of the public utility bill for the billing period for which it demanded payment. 765 ILCS 740/5(a) (West 2006).

Nonetheless, nothing in Illinois law restricts "rent" within the meaning of the Code to include only those charges for additional sums beyond "the recompense for the use and occupancy of lands" (*Bild*, 346 Ill. App. 3d at 276, 104 N.E.2d at 667) that the parties' lease expressly define as "rent." Regardless of plaintiff's alleged inclusion of utilities in its section 9—209 notice to defendant, she admits that

the trial court found that she is not responsible to plaintiff for any utility bills. Therefore, if plaintiff had erroneously included a demand for payment, its error did not prejudice defendant.

## B. Plaintiff's Alleged Violations of the Fair Debt Collection Practices Act

Defendant argues that because plaintiff's notice pursuant to section 9—209 was defective for seeking payment of an amount other than for rent, plaintiff's only recourse to collect a debt defendant owed it was to comply with the federal Fair Debt Collection Practices Act. Defendant argues that plaintiff violated or failed to comply with the FDCPA by referencing a judgment that has not occurred, by reporting her alleged delinquency to a credit reporting agency, and by posting notice of its demand to pay on defendant's apartment door within view of the general public.

For reasons we will discuss below, we agree that plaintiff's notice pursuant to section 9—209 was defective and defeats its claim against defendant under section 9—209. Therefore, we are not required to reach defendant's FDCPA argument to resolve her appeal. We will address the issue because we feel it vital to resolve any questions surrounding plaintiff's efforts to collect "debts" from defendant and others like her, and also because resolution of the question is of significant importance to future litigants in forcible entry and detainer proceedings. We address the FDCPA faced with the reality that no Illinois court has ever applied the FDCPA to a forcible entry and detainer action pursuant to section 9—209. The United States District Court for the Northern District of Illinois addressed the question in *Galuska v. Blumenthal*, No. 92 C 3781 (N.D. Ill. June 26, 1994).

In *Galuska*, the defendant "filed a forcible entry and detainer action in Cook County circuit court, seeking immediate possession of the property" against the plaintiff. *Galuska*, slip op. at 2. The plaintiff subsequently sued the defendant in federal district court alleging that it violated the FDCPA. *Galuska*, slip op. at 2. The *Galuska* court framed the question before it as whether "an obligation to surrender adverse possession of real property to its legal owner is identical to an obligation to pay money" such that the FDCPA applied to the defendant's forcible entry and detainer action in Illinois state court. *Galuska*, slip op. at 4. The court held that an action for forcible entry and detainer under Illinois state law was not identical to an action to collect a debt under the FDCPA and granted the defendant's motion for summary judgment on the plaintiff's complaint pursuant to the FDCPA. *Galuska*, slip op. at 4.

We decline to follow *Galuska* because we do not analyze its rationale to apply to the situation presented in the case at bar. The *Galuska* court based its holding exclusively on the United States Supreme Court's conclusions in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 128 L. Ed. 2d 556, 114 S. Ct. 1757 (1994). The *Galuska* court acknowledged that "the facts and issues of that case, which involved an alleged fraudulent conveyance of judicially foreclosed property, differed from those of [its] present case" but found that *BFP*'s "conclusions apply directly" to the question before it. *Galuska*, slip op. at 4. In *BFP*, the Supreme Court held that "when a State's judicial foreclosure procedures have been followed, it is 'black letter' law that the foreclosure will be presumed valid." *BFP*, 511 U.S. at 542, 128 L. Ed. 2d at 566, 114 S. Ct. at 1763. The Supreme Court went on to hold as follows:

> "Federal statutes impinging upon important state interests cannot be construed without regard to the implications of our dual system of government. When the Federal Government takes over local radiations in the vast network of our national economic enterprise and thereby radically readjusts the balance of state and national authority, those charged with the duty of legislating must be reasonably explicit. It is beyond question that an essential state interest is at issue here: we have said that 'the general welfare of society is involved in the security of the titles to real estate' and the power to ensure that security 'inherent in the very nature of state government.' Nor is there any doubt that the interpretation urged by petitioner would have a profound effect upon that interest: the title of every piece of realty purchased at foreclosure would be under a federally created cloud. To displace traditional State regulation in such a manner, the federal statutory purpose must be clear and manifest." *BFP*, 511 U.S. at 544, 128 L. Ed. 2d at 568, 114 S. Ct. at 1764-65.

The *BFP* Court's holding and, consequently, *Galuska* are immediately distinguishable because plaintiff completely failed to follow this state's procedures in its forcible entry and detainer action against defendant. The forcible entry and detainer statute does convey the right to force a party in adverse possession to surrender possession. Section 9—102 of the forcible entry and detainer statute provides that "[t]he person entitled to the possession of lands or tenements may be restored thereto." 735 ILCS 5/9—102(a) (West 2006). That right may only be invoked under specific circumstances.

Relevant here, the party entitled to possession may force surrender of an adverse possession when "any lessee of the lands or tenements, or any person holding under such lessee, holds possession without right after the termination of the lease or tenancy by its own

limitation, condition or terms, or by notice to quit or otherwise." 735 ILCS 5/9—102(a)(4) (West 2006). Section 9—209 does not establish procedures for actions to surrender adverse possession of real property to its legal owner. Rather, section 9—209 provides a statutory mechanism to terminate a lease. 735 ILCS 5/9—209 (West 2006) ("If the tenant does not within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended, and sue for the possession under the statute in relation to forcible entry and detainer ***").

Finally, the " 'clear and manifest' federal statutory purpose" of the FDCPA is well served by its application to the procedures and tactics plaintiff and those similarly situated use in cases like defendant's. As *Galuska* noted:

"The language of the FDCPA announces its purpose in no uncertain terms:

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. §15 U.S.C. 1692(e) (1988)." *Galuska*, slip op. at 4.

Despite the FDCPA's failure to include past-due rent in its explicit definition of "debt," we find that efforts to collect rent may (and in this case did) involve "abusive *** collection practices." More importantly, this state has expressed, through the forcible entry and detainer statute, its desire for "consistent State action to protect" renters. Because the collection of past-due rent directly involves the concerns addressed by the FDCPA, we find it permissible to apply the FDCPA to those cases despite any displacement such application may have on "traditional state regulation." *Galuska*, slip op. at 5. Accordingly, we now hold, as a matter of first impression, that lessors are required to comply with the FDCPA in their efforts to collect past-due rent from their lessees.

Defendant argues that plaintiff violated the notice provisions of the FDCPA. Defendant also argues that plaintiff violated the FDCPA by referencing a judgment it had not received in effort to collect a debt and by posting notice on her door having the effect of telling others of her debt. The FDCPA reads, in pertinent part, as follows:

"(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) [of this section] unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(c) Admission of liability

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

(d) Legal pleadings

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) [of this section].

(e) Notice provisions

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by [the Internal Revenue Code of 1986, chapter 94 of this title,] or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section." 15 U.S.C. §1692g (2006).

The record demonstrates that defendant repeatedly disputed the debt but does not establish that defendant notified plaintiff in writing of her dispute. Although we hold that plaintiff is not entitled to relief under the forcible entry and detainer statute and, therefore, it is not necessary to our resolution of the instant appeal, we find that plaintiff failed to comply with the FDCPA. Plaintiff's notice pursuant to section 9—209 and the June and July 2007 notices plaintiff posted on defendant's door do not comply with the requirements of section 1692g(a) of the FDCPA.

## C. Trial Court's Alleged Erroneous Inclusion of August Rent in Defendant's Judgment

Defendant argues the trial court erred in awarding plaintiff a judgment including rent for August 2007 because plaintiff never made a claim for August rent in its section 9—209 notices to defendant. Section 9—209 of the Code provides that "[a] claim for rent may be joined in the complaint, and a judgment obtained for the amount of rent found due, in any action or proceeding brought, in an action of forcible entry and detainer for the possession of the leased premises, under this section." 735 ILCS 5/9—209 (West 2006).

The Code did not require plaintiff to include a demand for August rent in its section 9—209 notice to defendant. Pursuant to section 9—209, plaintiff may join a demand for all rent due with its demand for payment in its complaint for forcible entry and detainer. Nor does its failure to demand August rent in its section 9—209 notice or its complaint for forcible entry and detainer preclude judgment in its favor for August rent if, in the detainer proceedings, the court determines that amount is due. Defendant does not dispute that she owes plaintiff rent for the month of August. Defendant admits that she failed to pay August rent on her assumption that it "would have been refused as was June and July." Defendant therefore concedes that the trial court properly determined that the "amount of rent found due" includes rent for the month of August.

Because defendant admits she owed rent for August and nothing in the Code precludes judgment in plaintiff's favor for all rent "due,"

defendant's argument that the trial court erroneously included August rent in its judgment in plaintiff's favor must fail.

## D. Plaintiff's Alleged Violation of the Retaliatory Eviction Act

Next, defendant argues that she established a *prima facie* case of retaliatory eviction and plaintiff failed to meet its burden to prove the eviction was nonretaliatory and, therefore, the trial court's order in favor of plaintiff must be reversed because "[r]etaliatory eviction is a legitimate defense to forcible entry and detainer." *Wood v. Wood*, 284 Ill. App. 3d 718, 725, 672 N.E.2d 385, 390 (1996). The trial court's finding that the proponent of the defense failed to put forth sufficient evidence of retaliatory eviction will not be disturbed unless its finding is contrary to the manifest weight of the evidence. *Shelby County Housing Authority v. Thornell*, 144 Ill. App. 3d 71, 74-75, 493 N.E.2d 1109, 1112 (1986).

> "It is declared to be against the public policy of the State for a landlord to terminate or refuse to renew a lease or tenancy of property used as a residence on the ground that the tenant has complained to any governmental authority of a bona fide violation of any applicable building code, health ordinance, or similar regulation. Any provision in any lease, or any agreement or understanding, purporting to permit the landlord to terminate or refuse to renew a lease or tenancy for such reason is void." 765 ILCS 720/1 (West 2006).

Defendant argues that plaintiff lacked any valid reason for filing its forcible entry and detainer action and did so only after defendant's complaints to various government agencies. In support of her contention that plaintiff lacked a valid reason for evicting her, defendant notes that plaintiff failed, in her estimation, to provide the statutorily required five-day notice to pay and subsequently refused her offer to pay the rent.

> "The *prima facie* elements of retaliatory eviction are that the tenant made complaints to a governmental authority, violations were found, the landlord was notified of the violations and the tenancy was terminated solely because of the tenant's complaints. [Citations.] Additionally, section 1 of the Act can be read only as barring the right of a landlord to terminate a lease and evict a tenant in those cases where the action is undertaken in retaliation for the tenant's complaints to governmental authority regarding code violations." *Thornell*, 144 Ill. App. 3d at 75, 493 N.E.2d at 1111-12.

As evidence that plaintiff filed its complaint in retaliation in violation of section 1 of the Retaliatory Eviction Act, defendant notes that plaintiff filed the complaint after she (a) contacted the Will County Legal Aid to question the validity of plaintiff's practice with regard to

payment for utilities, (b) contacted the Village of Bolingbrook regarding the property's utility billing, and (c) complained to the Bolingbrook police department that plaintiff was harassing her and that its staff allegedly entered her apartment illegally.

Although "the retaliatory eviction defense has generally been recognized in the context of a landlord's retaliation for a tenant's complaints to governmental authorities regarding building codes *** [citations]," this state "has never decided the defense is limited to that recognized in the Eviction Act." *Wood*, 284 Ill. App. 3d at 725, 672 N.E.2d at 390. Rather, the court has recognized the possibility that circumstances may arise where a landlord's action in seeking to evict a tenant is so invidiously motivated and so contravenes public policy that the court could not implement the eviction in a forcible entry and detainer proceeding. *Wood*, 284 Ill. App. 3d at 725, 672 N.E.2d at 390, citing *Seidelman v. Kouvavus*, 57 Ill. App. 3d 350, 354, 373 N.E.2d 53, 56 (1978).

To that end, and as further evidence of plaintiff's improper motive, defendant points to plaintiff's posting four notices on her door "for the public to see" and asserts that doing so was an attempt to intimidate her, plaintiff's alleged act of notifying a credit reporting agency of her delinquency before receiving a judgment in its favor, and plaintiff's refusal to explain its utilities billing practices. Although the plaintiff has the opportunity to assert a nonretaliatory reason for instigating forcible entry and detainer proceedings, defendant argues that the mere existence of a legitimate reason for eviction will not overcome the prohibition against retaliatory evictions if the evidence proves that the plaintiff was, in fact, motivated by any improper purpose.

Defendant relies on *Robinson v. Diamond Housing Corp.*, 463 F.2d 853, 865 (D.C. Cir. 1972), wherein the defendant asked the federal court to elucidate comprehensive guidelines for application of the *Edwards* defense, which provides that "a tenant may assert the retaliatory motivation of his landlord as a defense to an otherwise proper eviction." *Robinson*, 463 F.2d at 856, citing *Edwards v. Habib*, 397 F.2d 687 (D.C. Cir. 1968), *cert. denied*, 393 U.S. 1016, 21 L. Ed. 2d 560, 89 S. Ct. 618 (1969). Although the *Robinson* court declined to enumerate guidelines for application of the *Edwards* defense, the court did clarify that "the *Edwards* defense deals with the landlord's subjective state of mind—that is, with his motive. If the landlord's actions are motivated by a desire to punish the tenant for exercising his rights or to chill the exercise of similar rights by other tenants, then they are impermissible." *Robinson*, 463 F.2d at 85.

In this case, the trial court's judgment rejecting defendant's retaliatory eviction defense is not contrary to the manifest weight of

the evidence. Although defendant disputed the amount plaintiff sought to collect, she cannot dispute that, because plaintiff refused her timely tender of the apparently proper amount of the rent, she had not paid the actual rent due for June and July when plaintiff initiated forcible entry and detainer proceedings. In *Thornell*, the court affirmed the trial court's judgment that the defendant presented insufficient evidence of retaliatory eviction. The *Thornell* court affirmed the trial court's judgment rejecting the defense despite undisputed evidence in the record of numerous complaints against the plaintiff by the defendant. *Thornell*, 144 Ill. App. 3d at 75, 493 N.E.2d at 1112. The court found that where the defendant admitted that he made *no attempt to pay the rent due*, "the trier of fact could reasonably find that defendant's lease was terminated for failure to pay rent and not solely because of his complaints to HUD." *Thornell*, 144 Ill. App. 3d at 75, 493 N.E.2d at 1111-12.

Despite the potential for reasonable inferences, this court would have to engage in speculation to find even that plaintiff was partially motivated by defendant's complaints. The role of this court, however, is not to reinterpret the evidence or to engage in speculation but only to determine if the evidence supports the trial court's judgment. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 208, 835 N.E.2d 801, 865-66 (2005) ("At best, the court is suggesting another *possible* interpretation of the testimony at issue and substituting its judgment for the circuit court's. This is not a reviewing court's role"). Here, defendant admitted that her tender of rent for June and July was rejected by plaintiff because she disputed its attempt to collect late fees. The evidence supports a finding by the trial court that plaintiff filed its complaint for failure to pay rent. Its judgment is not against the manifest weight of the evidence and must be affirmed.

As demonstrated above, plaintiff has a valid basis for its forcible entry and detainer action against defendant. Moreover, plaintiff could properly seek payment of rent for August in the forcible entry and detainer action despite not including a demand for payment for August rent in its section 9—209 notice to defendant. Finally, plaintiff did not improperly seek payment for utilities in its forcible entry and detainer action and, regardless, the trial court did not erroneously award plaintiff damages for unpaid utilities. Defendant's argument that plaintiff's cause of action is barred by the Retaliatory Eviction Act must, accordingly, fail.

### E. Plaintiff's Alleged Violation of Section 9—211 of the Code.

■ Next, defendant argues that plaintiff violated section 9—211 of the Code by improperly posting its five-day notice on her door while

she was still in possession of and residing in the apartment. Regardless of the existence of a valid lease between the parties, we find that plaintiff's act of posting notice on defendant's door defeats plaintiff's claim because plaintiff failed to effect service of process in compliance with statutory requirements.

The law provides that a plaintiff in a forcible entry and detainer action bears the burden of proving to the trial court his or her right to possession of the property in question. *Harper Square Housing Corp. v. Hayes*, 305 Ill. App. 3d 955, 963, 713 N.E.2d 666, 672 (1999). An action to recover possession of a premises is a special statutory proceeding and, as we have already discussed, a party seeking this remedy must strictly comply with the requirements of the statute. *In re A.H.*, 195 Ill. 2d 408, 416, 748 N.E.2d 183, 189 (2001); *Nance v. Bell*, 210 Ill. App. 3d 97, 99, 568 N.E.2d 974, 975-76 (1991). Where the statute includes a requirement that written demand is made prior to filing a complaint, the demand must be made in strict compliance with the statute. *Williams v. Manchester*, 228 Ill. 2d 404, 419, 888 N.E.2d 1, 10 (2008); *Eddy v. Kerr*, 96 Ill. App. 3d 680, 681, 422 N.E.2d 176, 177 (1981).

Section 9—211 provides three methods of serving a notice of termination upon a tenant who is in actual possession of the premises. Section 9—211 reads as follows:

"Any demand may be made or notice served by delivering a written or printed, or partly written and printed, copy thereof to the tenant, or by leaving the same with some person of the age of 13 years or upwards, residing on or in possession of the premises; or by sending a copy of the notice to the tenant by certified or registered mail, with a returned receipt from the addressee; and in case no one is in the actual possession of the premises, then by posting the same on the premises." 735 ILCS 5/9—211 (West 2006).

Section 9—211 provides that the notice required in section 9—209 proceedings may be served "by posting the same on the premises" only "in case no one is in the actual possession of the premises." The five-day notice plaintiff included in the record as "Exhibit A" shows that it was posted on defendant's door because "no one" was in "actual possession" of the premises. Contrary to the proof of service, at trial the landlord did not dispute that defendant was in possession of the premises at the time of service. In fact, Ms. Banks, the assistant manager, testified that defendant was still in possession of the premises on the date of trial.

We are aware that the court has held that "the methods of service suggested in the *** statute are not meant to be exhaustive. [Citation.] Illinois cases have upheld a landlord's written notice even when

the method of service deviated slightly from those noted in the statute. [Citation.]" *Prairie Management Corp. v. Bell*, 289 Ill. App. 3d 746, 752, 682 N.E.2d 141, 145 (1997). Plaintiff's reliance on *Bell* is misplaced. The *Bell* case is distinguishable because the *Bell* court did not consider the section of the statute involved here, which only allows service by posting when the defendant is no longer in possession.

We now consider the issue that has been raised. The forcible entry and detainer statute is "in derogation of the common law." *Yale Tavern, Inc. v. Cosmopolitan National Bank*, 259 Ill. App. 3d 965, 971, 632 N.E.2d 80, 85 (1994). The supreme court has given clear direction that "a statute in derogation of the common law cannot be construed as changing the common law beyond what the statutory language expresses ***. *** Indeed, 'statutes in derogation of common law are to be strictly construed ***.' " *Williams*, 228 Ill. 2d at 419, 888 N.E.2d at 10, quoting *Summers v. Summers*, 40 Ill. 2d 338, 342, 239 N.E.2d 795, 798 (1968). Section 9—211 is an exclusive list of permissible delivery methods and must be strictly enforced. Section 9—211 simply does not "express" that posting notice on the occupant's door when she is in actual possession of the premises is a method of "delivering *** copy thereof to the tenant." 735 ILCS 5/9—211 (West 2006).

Although we recognize that defendant actually did receive notice of plaintiff's forcible entry and detainer action, strictly construing the statute, as we must, we hold that the method by which notice was "served" requires a finding that defendant did not receive proper notice and precludes plaintiff from obtaining relief under the statute. The face of the five-day notice contained in the record did not allow the trial court to conclude that proper service occurred based on the affidavit of service. Without proper service of notice, defendant's due process rights were violated and the court could not go forward on the purely statutory proceeding of forcible entry.

### F. Plaintiff's Failure to Comply With the Forcible Entry and Detainer Statute

Despite the foregoing conclusions, which we feel are mandated by existing law and that we are obligated to address based on the parties' arguments, defendant's arguments to this court highlight what we see as a threshold and decisive question in this case that the parties did not address. That is, whether they entered a valid lease agreement in the first instance. The question is threshold because, absent a valid lease agreement, defendant had no basis to invoke the power of the court pursuant to section 9—209 to remove plaintiff from the premises. The question is decisive because we find the parties did not enter a valid lease agreement.

First, as to the existence of a valid lease agreement as a prerequisite to the court's authority under section 9—209, we note that Illinois law draws a clear distinction between an action for rent and an action for possession pursuant to the forcible entry and detainer statute. *Sianis v. Kettler*, 168 Ill. App. 3d 1071, 1074-75, 523 N.E.2d 157, 160 (1988). The statute provides an alternate remedy to landlords beyond any the parties agreed to in their lease. Here, for example, the "lease agreement" specifically provides that the landlord may terminate the parties' agreement only under limited circumstances enumerated in the lease. The forcible entry and detainer statute provides a mechanism by which plaintiff could consider the lease ended other than for reasons listed in the terms of the "lease agreement."

The forcible entry and detainer statute is in derogation of common law. *Perry v. Evanston Young Men's Christian Ass'n*, 92 Ill. App. 3d 820, 823, 416 N.E.2d 340, 343 (1981). Because the statute is contrary to common law it must be strictly construed. *Williams v. Manchester*, 228 Ill. 2d 404, 419, 888 N.E.2d 1, 10 (2008) (" '[S]tatutes in derogation of common law are to be strictly construed and nothing is to be read into such statutes by intendment or implication.' [Citation.]"). Section 9—209 grants the landlord the right to "sue for the possession under the statute in relation to forcible entry and detainer, or maintain ejectment" *after* the lease is ended. 735 ILCS 5/9—209 (West 2006) (upon meeting certain conditions "the landlord *may consider the lease ended,* and sue for the possession under the statute in relation to forcible entry and detainer" (emphasis added)). The plain language of the statute predicates the right to sue "under the statute in relation to forcible entry and detainer" on the existence—and termination—of a lease.

Moreover, the forcible entry and detainer statute specifically defines what a lease is within the meaning of the statute. 735 ILCS 5/9—214 (West 2006). For purposes of the statute, "[t]he term 'lease' *** includes every letting, whether by verbal or written *agreement.*" (Emphasis added.) 735 ILCS 5/9—214 (West 2006). We find that the legislature clearly only intended the statute to apply to those situations where the parties have, at minimum, an actual "agreement" as to the letting of the subject property that is enforceable under the law. Here, the parties' alleged "agreement" is evidenced by the written "lease agreement." The court has the sole authority to determine whether the parties in fact reached an enforceable "agreement" in that written lease. *Jannusch v. Naffziger*, 379 Ill. App. 3d 381, 384, 883 N.E.2d 711, 714 (2008) ("the existence of the contract is a question of law").

The authority granted under the forcible entry and detainer statute and the proceedings and remedies provided by the Act are part of a comprehensive statutory scheme and, therefore, "the legislature may define it in such a way as to limit or preclude the circuit court's authority." *In re A.H.*, 195 Ill. 2d 408, 416, 748 N.E.2d 183, 189 (2001).

" 'When a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction' and the court 'must proceed within the strictures of the statute \*\*\*.' [Citation.] The court, therefore, has only the subject matter jurisdiction accorded to it by the statute and '[a]ny action taken by the circuit court that exceeds its jurisdiction is void and may be attacked at any time.' [Citation.]" *In re A.H.*, 195 Ill. 2d at 416, 748 N.E.2d at 189.

The supreme court has found that under these circumstances we "*must* determine" whether the court's order under the statute was proper "or whether that action would exceed the jurisdiction of the court and be void." (Emphasis added.) *In re A.H.*, 195 Ill. 2d at 416, 748 N.E.2d at 189. We are obligated to address plaintiff's full compliance with the terms of the statute—including the existence of a valid and enforceable agreement for the letting of the subject property—despite the parties' failure to fully address the question.

Our determination in this regard is based on undisputed facts and is a determination we make as a matter of law. Moreover, our failure to address this question would result in an injustice to defendant. For all of these reasons, our consideration of plaintiff's full compliance with all of the statute's requirements is proper. *State Farm Mutual Automobile Insurance Co. v. Suarez*, 104 Ill. App. 3d 556, 559-60, 432 N.E.2d 1204, 1207 (1982) ("The general rule \*\*\* is that the theory upon which a case is presented may not be changed upon review, and that an issue not presented to the trial court cannot be raised for the first time on appeal. [Citation.] However, this general rule is not rigid and inflexible. Where injustice might result, this court may consider questions of law not presented below. [Citations.] Reviewing courts have decided issues not presented to or decided by the court whose decision is being reviewed. [Citations.]").

For the court to recognize the parties' agreement, triggering its authority to act under the statute, the written agreement must evidence a meeting of the minds between the parties. *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 871, 885 N.E.2d 350, 356 (2008) ("Mistakes are divided into two groups. The first group consists of 'those fundamental in character, relating to an essential element of the contract which prevent a meeting of the minds of the parties and so no agreement is made.' [Citation.]"). We begin by noting that "[f]or a lease to be valid in Illinois 'there must be agreement as to the extent

and bounds of the property, *the rental price and time and manner of payment*, and the term of the lease.'" (Emphasis added.) *Regency Commercial Associates, LLC v. Lopax, Inc.*, 373 Ill. App. 3d 270, 281, 869 N.E.2d 310, 321 (2007), quoting *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.*, 114 Ill. 2d 133, 145, 500 N.E.2d 1, 6 (1986).

Here, the "lease agreement" provides that the "[o]wner has given Resident a rental concession [of] *** $112 off per month during the term of this Agreement." However, plaintiff admitted that it gave defendant a statement of charges that included a deduction of $101.76 as a "relocation credit." That same statement of charges informed defendant that plaintiff's own errors in preparing the statement of charges would not result in any liability to plaintiff or absolve the tenant of his or her obligation to pay all of the correct charges in a "timely" fashion. Plaintiff's apparent attempt to indemnify itself against its own negligence or wrongdoing in failing to properly credit defendant per the terms of the parties' alleged agreement and to provide her with an accurate statement of charges as contemplated by the express terms of the "lease agreement" presents other insurmountable obstacles to finding that the parties entered an enforceable agreement.

Before turning to the issue of plaintiff's ill-executed attempt at self-indemnification, we find that the problems with plaintiff's "statement of charges" are independently sufficient to find that the parties failed to reach an enforceable agreement for the letting of the apartment. First, we find that although plaintiff provided the "statement of charges" monthly and that they were not part of the parties' "lease agreement," they nonetheless formed part of the parties' agreement. Defendant provided the notice to plaintiff in the course of the parties' ongoing transaction for the lease of the premises.

The "lease agreement" provided that plaintiff would provide defendant a statement of the full amount of consideration for her use of the premises (including utilities) on a monthly basis. Therefore, for purposes of construing the "agreement" between the parties, we may properly consider the monthly statement of charges part of the written lease. *Timothy Christian Schools v. Village of Western Springs*, 285 Ill. App. 3d 949, 953, 675 N.E.2d 168, 171 (1996) (" 'where different instruments are executed as the evidence of one transaction or agreement, they are to be read and construed as constituting but a single instrument' "), quoting *Wilson v. Roots*, 119 Ill. 379, 386, 10 N.E. 204, 206 (1887); *In re Estate of Mayfield*, 288 Ill. App. 3d 534, 541, 680 N.E.2d 784, 789 (1997) ("Where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed

with reference to one another because they are, in the eyes of the law, one contract").

The parties' alleged agreement contains irreconcilable contradictions. Contradictions exist in the nature of the deduction from the agreed rent (as a "relocation credit" or as consideration for entering a 12-month lease) and the amount of the deduction. We may normally hesitate to find that a simple billing error is sufficient to abrogate an entire contract. But in this case, the terms of the contract (evidenced, in part, in the statement of charges) require one party to the lease to pay an amount the parties did not agree to or that party becomes liable for additional charges the parties did agree to under the express terms of the agreement. Additional contradictions exist in the "agreement" in that it also provides that those additional charges are not triggered (in the form of late fees) unless the lessee fails to pay the (correct) rent yet the lessee is obligated by the agreement, as interpreted by plaintiff and as admitted by defendant, to pay an incorrect amount.

There is yet another contradiction concerning the billing for utilities. The "lease agreement" obligates defendant to pay an amount—to be included in her statement of charges—for utilities attributable to her unit. The "agreement" recites that the plaintiff does not maintain separate meters, but that the usage is administered by the utility providers. Implicit in this provision is the potential for defendant to control her monthly "rent" by regulating her use of applicable utilities. Instead, however, plaintiff did nothing more than take the monthly utility amount, divide by the number of units, and bill defendant for her equal share. That formula for determining payment was not included in the lease. Even though, as we have previously noted, defendant could not complain about the utility billing in attacking the judgment because the trial court did not include any payment for utilities in the judgment calculation, it is nonetheless relevant on the issue of whether there was a meeting of the minds rendering this a valid contract.

We cannot find that anyone would "agree" to lease an apartment under such terms. (Nor, in fairness, do we make an explicit finding that plaintiff maliciously intended to set up a fraud against its tenants. Nonetheless, the effect of its practices and evident lack of skill in drafting contracts is to permit it to bill, under the guise of a binding contract, whatever it likes for the rental of its property.)

We find that there was no meeting of the minds between the parties as to one or more essential term of the "agreement"; specifically, the total consideration for use of the apartment or a consistent means of calculating that amount. Therefore we hold that the parties failed

to enter an enforceable contract. *Quinlan v. Stouffe*, 355 Ill. App. 3d 830, 839, 823 N.E.2d 597, 604 (2005) ("Since a meeting of the minds between the parties occurs when there has been assent to the same things in the same sense on all essential terms and conditions, the parties here did not have a meeting of the minds ***. [Citation.] As a result, the parties did not enter into a contract that had certain and enforceable essential terms").

Regardless of our finding that there was not and could not have been a meeting of the minds between the parties that defendant would, effectively, be required to pay whatever plaintiff chose to bill in a particular month, we further find that, under the terms of the "agreement," including the notice to tenants that they are required to pay the "correct" rental amount regardless of what is stated on the billing statement plaintiff provides, an essential term of the "agreement" is effectively undefined, preventing the formation of an enforceable contract.

The "lease agreement" purports to set forth the circumstances under which the lessee becomes liable for late fees. Under the "agreement," tenants are required to provide additional consideration for use of the apartments if they do not make payment on time. Were we to enforce the parties' "agreement" (including the billing statement) as written, a party to the "agreement" would be liable for late fees she may not know she incurred because she paid the amount stated on plaintiff's bill. Under such an arrangement, tenants would never know, from month to month, how much consideration is due under the contract. Under these specific circumstances we must find that the total consideration for the use of the property is undefined and the "lease agreement" is ambiguous. *Hunt v. Farmers Insurance Exchange*, 357 Ill. App. 3d 1076, 1079, 831 N.E.2d 1100, 1102 (2005) (an ambiguity exists in a contract if an essential term is undefined and the court cannot ascertain a "plain, ordinary, and popular meaning" for the term).

"It is a well-established precept that for an agreement to be legally binding, it must be reasonably definite and certain in its terms. 'When material terms and conditions are not ascertainable, there is no enforceable contract, even if the intent to contract is present.' " *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 658, 891 N.E.2d 1, 16 (2007), quoting *Wagner Excello Foods, Inc. v. Fearn International, Inc.*, 235 Ill. App. 3d 224, 229-30, 601 N.E.2d 956, 960 (1992). The total amount of monthly rent (including those additional amounts that the parties contemplated in the "lease agreement") for the apartment, or a standard by which a tenant could consistently determine the total amount of rent due, is neither certain nor ascertainable from this "lease agreement."

Returning to plaintiff's attempt to indemnify its own negligence, we find that the "agreement" contains a provision contrary to the public policy of this state. Plaintiff gave defendant a notice stating that its error in billing defendant had no effect on her obligation to pay the "correct" amount due under the "lease agreement." However, the lease agreement contains a waiver of liability only for

"damages by reason of any injury *** connected with said premises or the land surrounding said premises *** or the acts of neglect of co-residents, visitors, or other occupants of said premises, or of any owners or occupants of adjacent *** property, and Resident hereby agrees to indemnify and hold harmless Owner from any liability, loss or obligations resulting from any such injuries or damages."

Generally, "[b]arring a statutory provision to the contrary, contracts that clearly and explicitly provide indemnity against one's own negligence are valid and enforceable." *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 310 n.1, 882 N.E.2d 525, 530 n.1 (2008). However, "[b]ecause an agreement to indemnify a party for its own negligence is so unusual and extraordinary, the intent to indemnify to that extent must be beyond doubt by express stipulation." *Blackshare v. Banfield*, 367 Ill. App. 3d 1077, 1079, 857 N.E.2d 743, 74 (2006). This is so because "[t]o impose *** the duty to indemnify against injuries or damages entirely out of his control is unreasonable in the absence of clear language in the contract imposing exactly that duty." *Banfield*, 367 Ill. App. 3d at 1079-80, 857 N.E.2d at 74. Where there is no clear intent, that portion of the agreement is unenforceable against the indemnitor. *Banfield*, 367 Ill. App. 3d at 1079-80, 857 N.E.2d at 74. Further, "indemnity contracts are to be strictly construed, and any ambiguity in the agreement is to be construed most strongly against the indemnitee." *Banfield*, 367 Ill. App. 3d at 1079, 857 N.E.2d at 74.

The parties' "lease agreement" does not contain an "express stipulation" that plaintiff is indemnified for its negligence in billing defendant. Although defendant agreed to pay additional consideration for use of the apartment based on when she pays her monthly rent, nowhere in the "lease agreement" does defendant agree to pay additional consideration or to hold plaintiff harmless for billing errors that, under the "lease agreement" as written, obligate defendant to pay additional consideration for use of the apartment in the form of "late fees." The terms of the "agreement" obligating defendant to pay the "late fees" regardless of plaintiff's negligence in causing defendant to incur them are even more onerous in this case because of the potential for exactly what happened here: plaintiff attempted to enforce the "lease agreement" as literally written (including the bill-

ing notices contemplated in the "lease agreement") and collect "late fees" despite its own error; defendant rightly refused to pay the additional charges caused by plaintiff's negligence in preparing her billing statement because nothing in her understanding of the parties' actual "agreement" or the "lease agreement" obligated her to do so; and plaintiff began forcible entry and detainer proceedings resulting in defendant losing her home.

Under the terms of the "agreement," which we find unenforceable, defendant became obligated to pay additional consideration for use of the apartment for reasons entirely out of her control. The "lease agreement" contains no clear language imposing that duty. See *Banfield*, 367 Ill. App. 3d at 1079-80, 857 N.E.2d at 74. Accordingly, we hold that to the extent the parties' "agreement" as a whole imposes that duty, it is unenforceable against defendant. *Banfield*, 367 Ill. App. 3d at 1079-80, 857 N.E.2d at 74.

## G. Conclusions

Plaintiff did not violate the Retaliatory Eviction Act. We find that plaintiff violated section 9—211 of the Code. Because proper service of notice is a prerequisite to the right to forcible entry and detainer and defendant did not receive proper service, the trial court's order in favor of defendant must be reversed. We also find that plaintiff violated the Fair Debt Collection Practices Act. Finally, we find that by defining what is a lease and, necessarily, what is not a lease, the legislature intended to convey its intent that a valid lease agreement, and a failure to comply with its terms, are necessary to invoke the power of the State to wrest possession of the premises from the lessor. The statute does not abrogate the need for a lease. The statute instead explicitly recognizes the lessee's right to comply with the terms of the parties' agreement, assuming one exists, before the lessor may invoke the power of the court. The statute provides a mechanism by which the landlord may "consider the lease ended" in circumstances other than those spelled out in the parties' agreement when it has taken certain steps and the possessor has failed to act as provided by the statute's terms.

In this case, defects in the parties' alleged "agreement" prevent us from finding that the parties did in fact have a valid, enforceable "agreement" within the meaning of the statute and Illinois law. The "lease agreement" is not definite in stating defendant's rent. The amount defendant must pay in any given month to avoid liability to plaintiff for damages under the terms of the parties "agreement" (in the form of "late fees") or repercussions under state law (as in this case under the forcible entry and detainer statute) is not ascertainable

from the "lease agreement." Accordingly the contract is unenforceable. *Stouffe*, 355 Ill. App. 3d at 839, 823 N.E.2d at 605 ("a contract is not valid without enforceable essential terms"). Finally, we find that because the "lease agreement" does not clearly and explicitly provide indemnity against plaintiff's own negligence yet the entirety of the written "agreement" attempts to indemnify plaintiff, it is not enforceable. *Buenz*, 227 Ill. 2d at 310, 882 N.E.2d at 530.

Because we find that the record before this court proves that the parties never entered a valid "lease agreement," plaintiff could not invoke the right to consider the lease ended and sue for possession under the statute or maintain an action for ejectment. Even were we to consider the "lease agreement" a valid and enforceable agreement for the "letting" of the subject property within the meaning of the statute, plaintiff failed to comply with the terms of the statute and effectuate notice in compliance with section 9—211.

## CONCLUSION

For all of the foregoing reasons, the judgment of the circuit court of Will County is reversed.

Reversed.

JUSTICE WRIGHT, specially concurring:

An action to recover possession of premises is a special statutory remedy that begins with a threshold determination of whether the five-day notice was properly served within the parameters of the statutory requirements. Without the proper service of the written five-day demand to cure the alleged contractual violations, the circuit court could not properly begin to consider the merits of the complaint attempting to invoke the landlord's statutory ability to terminate the lease, evict the tenant, and seek damages.

The author has included a thorough and instructive discussion of warranted concerns related to the Fair Debt Collection Practices Act and the validity of the lease itself. I respectfully suggest those issues are not determinative of the outcome of this appeal. I prefer to reserve an analysis of the merits of the complaint for another day since this tenant may no longer be in possession or may be able to remedy any monetary deficiencies if and when a five-day notice is properly served.

I specially concur because I agree that this landlord is not entitled to relief under the forcible entry and detainer statute based on the defective notice to the tenant occupying the premises. However, I agree that the circuit court's decision must be reversed on the basis of defective notice alone.

66

For these reasons I specially concur.

SCHMIDT, J., joins in this special concurrence.